FRANK, Appellant,

v.

TOLEDO HOSPITAL et al., Appellees.

[Cite as *Frank v. Toledo Hosp.* (1992), 84 Ohio App.3d 610.]

Court of Appeals of Ohio,
Lucas County.

No. L–92–078.

Decided Dec. 30, 1992.

*Terry Lodge,* for appellant.

*Jennifer Dawson,* for appellee.

---

ABOOD, Judge.

This is an appeal from a summary judgment entered by the Lucas County Court of Common Pleas in favor of defendants-appellees, Toledo Hospital, Bryan Rogers and Donald Currier, in a sex discrimination case brought by plaintiff-appellant, Terri B. Frank.

Appellant sets forth one assignment of error:

"Appellant was disparately treated in that there was no consideration of maternity leave given, hence no leave was 'available,' contrary to the requirements of law."

The undisputed facts that are relevant to a determination of the issues raised by this appeal are as follows. By letter dated August 6, 1986, appellees confirmed appellant's acceptance of " * * * the position of In–Service Program Designer at The Toledo Hospital." The letter explained that " * * * your starting date will be August 18, 1986. This position is a temporary position which is projected to end on or before July, 1987." The letter went on to state that, "[a]s with all new employees, the above position is conditional upon your passing the preplacement physical examination which has been scheduled for you at 7:00 a.m. on August 12, 1986 in our Employee Health Department." On August 12, 1986, appellant was given her preplacement physical examination, during which she was informed that her rubella titer was low. Rubella ("German Measles") is a highly contagious disease that can cause serious birth defects when contracted by pregnant women. As part of its effort to provide a rubella-free environment, appellees have a strictly enforced rubella policy that provides:

"All new employees of the hospital will be given a rubella titer test as precondition for employment. This test will be given in Employee Health at the time of the pre-employment physical examination. If the test results from the titer are less than one to ten, it will be mandatory for that employee to receive the rubella vaccine."

In accordance therewith, appellees offered appellant an immunization; however, she refused it because of an anticipated pregnancy and the potential danger of damage to the fetus from the immunization. It appears from the record that appellant was, nevertheless, permitted to begin employment with appellee on August 18, 1986. In the second week of September, appellant confirmed that she was pregnant and could not receive the immunization. In a letter dated November 7, 1986, appellees informed appellant as follows:

"As you are aware, the rubella vaccine that you are not able to receive right now due to your pregnancy is required of all employees who show a negative titer in the physical process. Because of this policy regarding the vaccine, The Toledo Hospital has to discontinue your employment. We understand your decision not to take the vaccine and we do feel that this was sound judgment on your part.

"You have been an asset to The Toledo Hospital and we have appreciated your efforts. You have had good supervisor reviews and your performance has been excellent. We highly encourage your reapplying to The Toledo Hospital upon your being able to receive the vaccine."

On February 9, 1987, appellees hired another woman to fill the position of In–Service Program Designer. She remained at that position until February 26, 1988.

On February 13, 1990, appellant filed her complaint in the Lucas County Court of Common Pleas in which she alleged in part that appellees had unlawfully terminated her employment based upon her sex and/or pregnancy. On June 22, 1990, appellees filed a motion for summary judgment in which they argued in part that appellant cannot make out even a prima facie case of gender-based discrimination, that there is no evidence that plaintiff's pregnancy was regarded as a disability, and that even if appellant makes out a *prima facie* case, appellees' rubella policy has a legitimate business interest. The record that was before the trial court upon summary judgment consists of the pleadings, responses to interrogatories and various documents produced in response to discovery requests.[1] On February 4, 1992, the trial court filed its opinion and judgment entry in which it granted appellees' motion for summary judgment.[2] The trial court considered " * * * two analytical theories: disparate treatment and disparate impact," and found that appellant " * * * has failed to come forward with any direct, statistical, or comparative evidence showing that the Hospital treated her differently than other persons who, for other reasons, were unable to receive the rubella shot."

It is from this judgment that appellant brings this appeal.

---

1. It appears from the briefs of the parties in the trial court on summary judgment that plaintiff's deposition was taken. The record, however, does not indicate that this deposition was filed with the trial court.

2. On December 6, 1990, the trial court *sua sponte* dismissed appellant's complaint pursuant to Civ.R. 12(B)(1), reasoning that, because appellant's case was an independent civil action rather than a proceeding instituted pursuant to R.C. 4112.06, the court lacked subject matter jurisdiction. On August 16, 1991, this court issued a decision and journal entry in which it found that the trial court erred in dismissing appellant's complaint on this basis and remanded the case to the trial court for further proceedings. The summary judgment that is now before this court followed.

In her sole assignment of error, appellant contends that she was disparately treated because she was not offered maternity leave in lieu of termination. In support of her assignment of error, she argues: (1) appellees did not give her " * * * the same leave opportunity as nonpregnant disabled employees * * * "; she contends that she was not obligated to demonstrate that she was treated differently from others who for reasons other than pregnancy could not be immunized against rubella but rather was responsible only for showing that leave options for nonpregnant, disabled persons differed from leave options for pregnant ones; (2) " * * * reliance on the rubella policy to require termination imposed a burdensome requirement upon pregnant women which no male could ever suffer * * * "; and (3) Ohio Adm.Code 4112–5–05 " * * * suggests that even where there is not [*sic* ] leave policy, one must be fashioned for pregnant women—which accords with the *Zuniga* holding [*infra* ] that pregnancy is a burden restricted to females and which justifies remedial treatment."

Appellees respond that a motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial and that appellant produced no evidence to establish a *prima facie* case of sex discrimination. Appellees argue that appellant produced no evidence that: (1) she ever requested or was denied maternity leave; (2) she would have benefitted from such leave when her position was slated to end before the end of her pregnancy; (3) " * * * a similarly situated male had been treated more favorably"; (4) the rubella policy is a facially discriminating employment criterion; and (5) the rubella policy has a disparate impact on women. Appellees additionally respond that, if a disparate impact on women is found to exist as a result of the rubella policy, the aim of the policy, which is to provide a rubella-free environment, is a legitimate, neutral business interest.

Civ.R. 56(C) provides, in pertinent part, that:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

When the party moving for summary judgment specifically delineates the absence of certain elements as the basis upon which summary judgment is sought

and sufficient time in which to conduct discovery has passed, the nonmoving party must " * * * make a showing sufficient to establish the existence of [such] element * * * " when it is one that is essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 273–274; *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798, 802, and at the syllabus.

In considering appellant's assignment of error, this court must determine if there remains a genuine issue of material fact whether appellees terminated appellant's employment because of, or on the basis of, her sex.

R.C. 4112.02 provides, in pertinent part, that:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges or employment, or any matter directly or indirectly related to employment."

R.C. 4112.01(B) provides, in pertinent part, that:

"For the purposes of divisions (A) to (F) of section 4112.02 of the Revised Code, the terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work * * *."

Ohio Adm.Code 4112–5–05(G) provides that:

"(2) Where termination of an employee who is temporarily disabled due to pregnancy is caused by an employment policy under which insufficient or no maternity leave is available, such termination shall constitute unlawful sex discrimination.

" * * *

"(6) If the employer has no leave policy, childbearing must be considered by the employer to be a justification for leave of absence for a female employee for a reasonable period of time. Following childbirth, and upon signifying her intent to return within a reasonable time, such female employee shall be reinstated to her

original position or to a position of like status and pay, without loss of service credits."

■ Sex discrimination in employment occurs when (a) an employer makes a sex differentiation a condition affecting employment or (b) an ostensibly neutral factor works disproportionate damage on the employment opportunities of one sex, and (c) such sex differentiation or ostensibly neutral factor does not fall within a recognized legal justification. Sex differentiation which involves the application of facially discriminatory employment criteria produces "disparate treatment" of a person entitled to protection under the law. Facially neutral criteria that result in discriminatory consequences to members of a protected class produce a "disparate impact" upon the affected individuals. 1 Larson, Employment Discrimination (1992) 3–1 and 3–37, Sections 10.00 and 12A.00; *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 610, 575 N.E.2d 1164, 1167–1168.

In *Little Forest Med. Ctr. of Akron,* the Supreme Court of Ohio made it clear that " ' * * * federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) *et seq.,* Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.' " *Id.* at 609–610, 575 N.E.2d at 1167, quoting *Plumbers & Steamfitters Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202, 421 N.E.2d 128, 131.

As to "disparate treatment," our courts have adopted the formula set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668, 677–679 (for claims brought pursuant to Title VII), as the analysis for judicial inquiry into complaints alleging disparate treatment in violation of R.C. Chapter 4112. *Plumbers & Steamfitters, supra,* 66 Ohio St.2d at 197, 20 O.O.3d at 203, 421 N.E.2d at 131–132; *In re Brantley* (1987), 34 Ohio App.3d 320, 322, 518 N.E.2d 602, 604; *Willis Day Indus. Park, Inc. v. Ohio Civ. Rights Comm.* (C.P.1986), 30 OBR 1, 3–4, 509 N.E.2d 434, 437–438; *Mitchell v. Toledo Hosp.* (C.A. 6, 1992), 964 F.2d 577, 582. Although the *McDonnell Douglas* formula was developed in response to allegations of racial discrimination in hiring, both federal and Ohio courts have found the formula to be flexible enough to fit the varying factual allegations in Title VII and R.C. Chapter 4112 cases pertaining to sex discrimination and discriminatory discharge, and have modified it accordingly. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 253–254, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207, 215–216, fn. 6; *Plumbers & Steamfitters, supra,* 66 Ohio St.2d at 197, 20 O.O.3d at 203, 421 N.E.2d at 131–132; *Willis Day Indus. Park, Inc., supra,* 30 OBR at 4, 509 N.E.2d at 437–438.

Under the *McDonnell Douglas/Burdine* formula, the appellant in this case must first prove by a preponderance of the evidence a *prima facie* case of

disparate treatment. If appellant proves a *prima facie* case, the burden then shifts to appellees to provide the necessary legal justification for the differentiation.[3] Should appellees carry their burden, appellant must then be given an opportunity to prove that the stated justification is merely a pretext.

As modified to fit the allegations in this case, the *McDonnell Douglas* analysis requires that appellant first establish a *prima facie* violation of R.C. 4112.02 by showing that: (1) she was pregnant; (2) she was discharged; and (3) a comparable non-protected employee was treated better.

■ This court finds preliminarily that under the facts of this case, only employees with low titer who were unable to receive immunization are comparable to appellant. Upon consideration of the evidence that was before the trial court, we find that there was no evidence presented that leave was available for or given to non-protected employees with low titer who, for reasons other than pregnancy, were unable to receive or were forced to forestall immunization; or that pregnant employees with sufficient titer were discharged or were treated differently from non-pregnant employees with sufficient titer.

Appellant's argument that " * * * reliance on the rubella policy to require termination imposed a burdensome requirement upon pregnant women that no male could ever suffer," is based on the cases of *Schneider v. Jax Shack, Inc.* (C.A. 8, 1986), 794 F.2d 383, and *Zuniga v. Kleberg Cty. Hosp., Kingsville, Texas* (C.A. 5, 1982), 692 F.2d 986. These cases are distinguishable, however, since they involve discharges from employment *because of pregnancy.* See 1 Larson, *supra,* 3–25 to 3–26 and fn. 52.1, Section 12.11. In *Zuniga,* the Fifth Circuit Court of Appeals found that the employer's stated business justification was a mere pretext for discrimination because it " * * * could have avoided terminating Zuniga's employment * * * by granting Zuniga a leave of absence * * *." *Id.* at 992. The court considered a leave of absence to be a "less discriminatory alternative" to termination. *Id.* The failure of Zuniga's employer to consider the less discriminatory alternative of a leave of absence, however, did not become a factor in the court's decision until *after* it had found that Zuniga established a *prima facie* case of disparate impact by showing that her employer had an " * * * unwritten policy requiring pregnant x-ray technicians to resign or be

---

**3.** Appellant does not argue that appellees' rubella policy is a gender-based *hiring* criterion. Rather, appellant has chosen to argue her case as one of discriminatory discharge, even though she considers herself to be a "new" employee. It should be noted, however, that the *McDonnell Douglas* evidentiary formula has been altered at least in those cases where the allegation is that facially discriminatory hiring criteria were utilized by the employer. In these cases, if the plaintiff proves a *prima facie* case of disparate treatment, the employer can justify such gender-specific hiring criteria only by *proving* a *bona fide occupational qualification,* rather than by merely *articulating* a *legitimate business interest. Little Forest Med. Ctr. of Akron, supra,* at the syllabus.

terminated * * *." *Id.* at 991. The court went on to explain that "[d]epriving a woman of her job *because she is pregnant* can in no way be characterized as the withholding of a benefit that men cannot and do not receive * * *. Rather, it imposes a heavy burden which no man is ever likely to suffer." (Emphasis added.) *Id.*

Under the holding in *Zuniga*, appellant must first show that she was discharged because of pregnancy or that the rubella policy disparately impacted upon pregnant employees. It is undisputed, however, that appellant's employment was terminated because she suffered from low titer and could not receive the rubella vaccine in accordance with hospital policy. The fact that the reason why appellant could not receive the vaccine was her pregnancy does not mean that her discharge was because of her pregnancy. There was no evidence before the trial court that the rubella policy applied only to pregnant employees, required that pregnant employees be discharged, or had a disparate impact upon pregnant employees.

Appellant's argument that " * * * leave * * * must be fashioned for pregnant women" is based on Ohio Adm.Code 4112–5–05(G)(2) and (6). "Under this approach, leaves of absence must be available to pregnant workers. An employer may not terminate a female employee who is compelled to cease work *because of pregnancy* without offering her, alternatively, a leave of absence." (Emphasis added.) 1 Larson, *supra*, at 8–56, Section 38.22; see, also, *Abraham v. Graphic Arts Internatl. Union* (C.A.D.C.1981), 660 F.2d 811, 819; *Holthaus v. Compton & Sons, Inc.* (C.A. 8, 1975), 514 F.2d 651, 653; *Willis Day Indus. Park, Inc., supra*, 30 OBR at 7–8, 509 N.E.2d at 440–441; Annotation (1976), 27 A.L.R.Fed. 537, 548, Section 3.

The purpose of Ohio Adm.Code 4112–5–05(G)(2) and (6) is clearly to provide substantial equality of employment opportunity by prohibiting an employer from terminating a female worker *because of pregnancy* without offering her a leave of absence, even if no disability leave is available generally to employees. Larson explains that:

"We have here an example of the kind of case in which an 'equality' issue cannot be disposed of by decreeing that the sexes shall be treated exactly alike. Instead, we must build upon a quite different premise: when the two sexes are *dissimilar* in that one sex exclusively possesses a trait which the other, without exception, does not possess, it is a differentiation based on sex to treat the two sexes *similarly* in that regard. Clearly, if an employer says, 'All pregnant employees will be fired,' there is sex differentiation. It is really no different in effect to say, 'No maternity leaves will be granted.' Some leave accompanying childbirth is a necessity, and a policy of denying it, with discharge as the alternative, is tantamount to a policy of outright discharge for pregnancy. In

other words, discharge for pregnancy is sex differentiation unless accompanied by the alternative of maternity leave. This in turn leads inexorably to the statement of the proposition that exposes the apparent paradox of requiring inequality to produce equality: it is sex differentiation *not* to offer to women a benefit denied to men—maternity leave. The reason is that this 'inequality' is necessary to provide substantial equality of employment opportunity." (Emphasis *sic.*) *Id.* at 8–59 to 8–60.

As stated earlier, however, this court cannot construe appellant's pregnancy as having been a factor in her discharge.

■ The remaining basis for appellant's argument that "leave must be fashioned for pregnant women" seems to be that, by considering Ohio Adm.Code 4112–5–05 and *Zuniga* together, " * * * pregnancy * * * justifies remedial treatment." This argument amounts to a proposition that any time an employer wishes to terminate a pregnant employee, it must offer her leave in lieu of termination, even if her pregnancy is not a factor in the termination. The failure to make leave available to a pregnant employee in lieu of terminating her is not discriminatory, however, unless it is shown that such employee was terminated because of, or on the basis of, sex, including pregnancy.

Upon consideration of the entire record of proceedings that was before the trial court and the law as set forth above, this court finds that there remains no genuine issue as to any material fact, and, when construing the evidence most strongly in favor of appellant, reasonable minds can only conclude that appellant has failed to establish a *prima facie* case of gender-based discrimination.

Accordingly, appellant's sole assignment of error is not well taken.

On consideration whereof, this court finds that substantial justice has been done the party complaining, and the summary judgment entered by the Lucas County Court of Common Pleas in favor of appellees is affirmed. This court finds further that there are reasonable grounds for this appeal, and court costs only are assessed against appellant.

*Judgment affirmed.*

GLASSER, P.J., and HANDWORK, J., concur.