BOBASH, Appellant,

v.

CITY OF TOLEDO et al., Appellees.

[Cite as *Bobash v. Toledo* (1998), 129 Ohio App.3d 202.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–97–1391.

Decided July 24, 1998.

*Richard M. Kerger,* for appellant.

*Edward M. Yosses,* Director of Law, and *James G. Burkhardt,* Assistant Director of Law, for appellees.

SHERCK, Judge.

This appeal comes to us from a summary judgment granted by the Lucas County Common Pleas Court to a municipal employer in a suit concerning promotion practices. Because the trial court properly held that appellant failed to prove a *prima facie* sex discrimination violation and that a written employment agreement (which is the product of collective bargaining) takes precedence over "custom and practice," we affirm.

Appellant, Cynthia T. Bobash, is a police lieutenant employed by appellee, city of Toledo, Ohio.[1] In 1993, appellant, along with several other lieutenants, submitted to a series of tests and interviews, the purpose of which was to rank candidates for promotion to captain.

Appellee is party to a collective bargaining agreement with the Toledo Police Command Officers Association. It is uncontested that part of that agreement is a 1984 "memorandum of understanding" that outlines the procedures by which a promotion to police captain is accomplished. Section 3 of this memorandum provides that, following the testing process, "[t]he Command Officers receiving the three (3) highest overall grades or scores * * * will then be eligible for promotion to the rank of Police Captain * * * and the Chief of Police may promote any one of these Command Officers."

In June 1995, a vacancy occurred in the captain's rank. The top three candidates on the promotion list at that time were, in descending order, (1) a Caucasian male, (2) appellant, who is a Caucasian female, and (3) an African-American male. When the chief of police passed over appellant and promoted

---

1. Other nominal appellees are Toledo Mayor Carleton Finkbeiner, the Toledo Civil Service Commission, and Toledo Police Chief Gerald Galvin. As the interest of these parties coincide, we shall refer to them as a single appellee.

the African–American male, appellant brought suit alleging sex discrimination and breach of an implied contract. Appellant sought a decree ordering appellee to install her in the rank of captain and damages sufficient to make her whole.

Following proceedings on a prayer for preliminary injunctive relief, the matter was submitted to the court on cross-motions for summary judgment.

On consideration, the court concluded that appellant had failed to demonstrate that she was denied promotion in favor of a nonprotected employee and, therefore, failed to show *prima facie* sexual discrimination. The court also determined that appellant's reliance on appellee's affirmative action policy as an implied contract was unavailing, as such a policy was subservient to the collective bargaining agreement. Similarly, the court determined that appellant's claim premised on promissory estoppel could not succeed in the face of a written employment agreement.

Consequently, the trial court denied appellant's motion for summary judgment and granted appellee's. From this judgment, appellant now brings this appeal, setting forth the following four assignments of error:

"*Assignment of Error No. 1.* The court erred in finding that a custom and practice could not control the conduct of the parties to a collective bargaining agreement.

"*Assignment of Error No. 2.* The court erred in concluding that there was no material issue of fact that a custom or practice had not been established by the city with respect to the promotion of police officers to captaincy positions.

"*Assignment of Error No. 3.* The court in failing to find that, even if there existed discretion to select among the top three candidates for promotion, there was factual dispute as to whether that discretion was exercised in a discriminatory manner.

"*Assignment of Error No. 4.* The court erred in finding that there was no material issue of fact as to whether the plaintiff had established the fourth prong of the *McDonnell–Douglas* test for the determination of sex discrimination."

On review, appellate courts employ the same standard for summary judgment as trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. The motion may be granted only when it is demonstrated:

"(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day*

*Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, Civ.R. 56(C).

When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery* (1984), 11 Ohio St.3d 75, 79, 11 OBR 319, 322–323, 463 N.E.2d 1246, 1249–1250.

I

We shall discuss appellant's first and second assignments of error together.

Appellant presented evidence to the trial court that, prior to this occasion, when a Toledo Police Chief chose a captain, the chief almost invariably chose the highest scoring of the three officers on the available for promotion list. The only variation from this pattern occurred on one occasion when higher ranked candidates declined promotion. This, appellant argued, established a custom and practice. In this instance, the practice was violated when the chief passed over the first- and second- ranking candidates in order to promote an African–American male.

The trial court rejected appellant's custom-and-practice argument, concluding, first, that the present police chief's two prior appointments to this grade "hardly establishes a custom and practice" and, second, in any event, custom and practice cannot override an unambiguous, bargained-for condition found in the collective bargaining agreement and the "memorandum of understanding."

Appellant asserts that the trial court's conclusion was erroneous. Citing *Transportation–Communication Employees Union v. Union Pacific Ry. Co.* (1966), 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264, appellant insists that collective bargaining agreements operate under rules special from other contracts. "In order to interpret such an agreement it is necessary to consider the scope of other collective bargaining agreements, as well as practice, usage and custom pertaining to all such agreements." *Id.* at 161, 87 S.Ct. at 371, 17 L.Ed.2d at 268.

To the extent that a collective bargaining agreement must be interpreted, appellant is correct. Established custom and practice should be considered in construing the meaning of the agreement. However, it is well established that

when the terms of an agreement are clear and unambiguous, no interpretation or construction is necessary. *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11* (1991), 59 Ohio St.3d 177, 180, 572 N.E.2d 71, 73–74, citing *Detroit Coil Co. v. Internatl. Assn. of Machinists & Aerospace Workers, Lodge No. 82* (C.A.6, 1979), 594 F.2d 575, 579; see, also, *Beacon Journal Publishing Co. v. Akron Newspaper Guild, Local No. 7* (C.A.6, 1997), 114 F.3d 596, 601; *Excel Corp. v. United Food & Commercial Workers Internatl. Union, Local 431* (C.A.8, 1996), 102 F.3d 1464, 1468.

Section 3 of the 1984 "memorandum of understanding" clearly and unambiguously vests the chief of police with authority to choose any of the top three ranked command officers for promotion to captain. This provision requires no interpretation or construction. Therefore, the trial court properly excluded consideration of custom and practice from its analysis. Accordingly, appellant's first assignment of error is not well taken, and her second assignment of error is consequently moot.

## II

Appellant's remaining assignments of error concern whether the promotion of an African–American male over appellant was discriminatory. Appellant asserts that, at the least, there is a factual question as to whether the selection process was discriminatory and whether appellant had presented a *prima facie* case of sex discrimination pursuant to *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

Concerning the question of discriminatory selection, the city of Toledo has an aspirational affirmative action plan in which both African–Americans and women are included in the protected class. Moreover, the trial court received a substantial body of evidence as to how the city statistically determines whether a minority is underutilized in various positions, including the police ranks. The evidence is unrefuted that at the time of the vacancy at issue, African–Americans were underutilized at the rank of captain and women were not. Given this testimony, we cannot say that the chief's selection of an African–American over a woman for this position was arbitrary or unreasonable. Accordingly, appellant's third assignment of error is not well taken.

Regarding the *McDonnell Douglas* test, the trial court properly concluded that the issue in this case was disparate treatment. The trial court also noted that, in disparate treatment cases under either federal or state law, some variety of the *McDonnell Douglas* analysis is used. See *Frank v. Toledo Hosp.* (1992), 84 Ohio App.3d 610, 615, 617 N.E.2d 774, 778. Modifying the test to fit the specific allegations of this case, the trial court concluded that to go forward with a

disparate-treatment claim, appellant had to make out a *prima facie* violation by showing that (1) she was a member of a protected class, (2) she applied for and was qualified for the promotion she sought, (3) she was not promoted, and (4) a comparable nonprotected employee was promoted.[2] The trial court found it undisputed that appellant satisfied the first three elements. However, the court noted that since the African–American who was selected over appellant for the promotion at issue was also a member of a protected class, appellant failed to satisfy the fourth prong of the test.

Appellant attacks this conclusion in two ways. Conceding that women and African–Americans are in comparable protected classes, she argues that, since they are equal in the eyes of affirmative action, she should prevail because of her superior test ranking. This is the same argument we rejected in appellant's first assignment of error, and we see no need to revisit that decision.

Next, appellant suggests that the city should "over-promote," that is, create a second captain's position so that both she and the African–American could be promoted. Although appellant presented evidence that this practice had been previously employed, she came forth with no authority that over-promotion is required. Neither did she present any evidence that appellee's refusal to create a new position for her implicated any discriminatory motive. Accordingly, appellant's final assignment of error is not well taken.

Upon consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.

*Judgment affirmed.*

HANDWORK, P.J., and KNEPPER, J., concur.

---

2. The test for sexual discrimination is set out in *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 252–256, 101 S.Ct. 1089, 1093–1095, 67 L.Ed.2d 207, 214–217, and is a slight modification of the *McDonnell Douglas* test involving shifting burdens between employer and employee. Ultimately, however, the burden of proof is on the plaintiff to show that she was passed over for someone who is not within a protected class. *Id.* at fn. 6.