**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0152n.06
Filed: February 25, 2005

No. 03-4269

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

PAUL SCHRAM,                                  )
                                              )
    **Plaintiff-Appellant,**                )
                                              )    **ON APPEAL** FROM THE
v.                                            )    UNITED STATES DISTRICT
                                              )    COURT FOR THE SOUTHERN
                                              )    DISTRICT OF OHIO
SCHWAN'S SALES                                )
ENTERPRISES, INC.,                            )
                                              )    **O P I N I O N**
    **Defendant-Appellee.**                 )
_____)

**Before:  SILER and ROGERS, Circuit Judges, and CALDWELL,*  District Judge.**

    **KAREN K. CALDWELL, District Judge.**  Plaintiff-Appellant Paul Schram ("Schram")

appeals the district court's grant of summary judgment to Defendant-Appellee, Schwan's Sales

Enterprises, Inc. (the "Company").  Schram claims that the Company terminated him because of his

age.  We **AFFIRM** in part, **REVERSE** in part and **REMAND** to the district court for proceedings

not inconsistent with this opinion.

## I.  FACTS.

    Schram was 57 when the Company terminated him from his position as division manager

of the Company's Southwest Ohio Division, a position he had held for approximately 11 years.  He

---

    *The Honorable Karen K. Caldwell, United States District Judge for the Eastern District
of Kentucky, sitting by designation.

had been employed by the Company for approximately 20 years.

Prior to the date that Schram was terminated as division manager, the Company had four divisions in Ohio under the control of a regional manager, Gary Danbrook: 1) the Lake Division with Paul Dodge as division manager; 2) the Northeast Division with Dan Stillwagon as division manager; 3) the Ohio Division with Ron Moffis as division manager; and 4) the Southwest Ohio Division with Plaintiff Schram as division manager.

In 2001, the Company began a national reorganization in an effort to increase profitability. As part of the reorganization, in June, 2001, the Company decided to consolidate its four Ohio divisions into three divisions. In his deposition, Regional Manager Danbrook stated that the Company decided to divide Schram's Southwest Ohio Division into the other three divisions because it was the smallest of the four divisions. Danbrook testified that the decision to terminate Schram as division manager was made by Danbrook and two other Company employees.

On June 19, 2001, Danbrook met with Schram and delivered a letter from the Company which stated that it would "serve as formal notice of your termination from the position of Division Manager with [the Company], effective June 19, 2001. . . Although you will receive your regular pay through July 19, 2001, you are relieved of your duties effective immediately." In the letter, the Company gave Schram two options. He could either receive his severance pay of $11,294.50 or he could look for other positions within the Company during the next 30 days.

Regional Manager Danbrook offered Schram the position of sales manager in Middletown, Ohio with the same salary and benefits Schram had received as division manager. Schram did not accept the sales manager position. He did not report to work again after the June 19, 2001 letter terminating him as division manager. He was paid for an additional 30 days, through July 19, 2001.

2

Schram decided not to look for another position in the Company and called Danbrook to inform him that he "chose to leave" the Company.

After the reorganization, the Company's three new Ohio divisions were 1) the Northwest Division with Paul Dodge as manager; 2) the Northeast Ohio Division with Dan Stillwagon as manager; and 3) the Southwest Ohio Division with Ron Moffis as manager. The day after Regional Manager Danbrook delivered the letter terminating Schram from the position of division manager, Ron Moffis – the manager of the newly created Southwest Ohio Division– announced his retirement. Prior to the date that Danbrook terminated Schram as division manager, Moffis had already notified Danbrook that he intended to retire but had not "made it final."

Danbrook testified that, after Moffis notified Danbrook that he was going to retire, the Company "posted" the division manager position from June 21, 2001 to July 4, 2001. Twenty-one people applied for the job, 13 of which were interviewed. Froman Adler, a 35-year old who had been a sales manager for the Company in Kentucky for approximately six years, was selected for the position. Adler began working as division manager for the Southwest Ohio Division on July 30, 2001. The Company never told Schram that one of the three division manager positions had become vacant.

Schram filed a complaint against the Company asserting claims of age discrimination under Ohio Rev. Code § 4112.02 and tortious wrongful discharge in violation of Ohio public policy. The district court granted the Company's Motion for Summary Judgment, finding that Schram had failed to establish a prima facie case of age discrimination and that his public policy claim failed because

3

he was not "discharged" from the Company.[1]

## II. ANALYSIS

This Court reviews the district court's grant of summary judgment *de novo*. *Lautermilch v. Findlay City Schools*, 314 F.3d 271, 274 (6th Cir. 2003), *cert. denied*, 540 U.S. 813 (2003). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*. The Court must view all evidence in the light most favorable to Schram. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Schram asserts a claim of age discrimination under Ohio Rev. Code § 4112.02. In analyzing age discrimination claims under the Ohio statute, Ohio courts have adopted the framework established in federal case law for claims asserted under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002)(citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981); *Mauzy v. Kelly Services, Inc.*, 664 N.E.2d 1272, 1276 (Ohio 1996); *Frank v. Toledo Hospital*, 617 N.E.2d 774, 778 (Ohio Ct. App. 1992)).

Under the ADEA, claims are analyzed using a framework generally called the *McDonnell Douglas* burden shifting framework. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310-13 (1996)(modifying the *McDonnell Douglas* framework for ADEA cases). Under that framework, an employee bringing an age discrimination claim must first establish a prima facie case by showing that: (1) he was at least 40 years old at the time of the alleged discrimination, (2) he was

---

[1] Schram's brief on appeal does not address his public policy claim and, therefore, the claim is abandoned and not reviewable. *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998).

subjected to an adverse employment action, (3) he was otherwise qualified for the particular position at issue, and (4) he was replaced by someone substantially younger. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998).

This framework is modified if the employee is discharged in connection with a reduction in force ("RIF"), where a plaintiff is not replaced by any other employee. *See Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998). Instead of establishing that he was replaced by a substantially younger worker, the plaintiff who is discharged as part of a RIF must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

If the plaintiff successfully establishes a prima facie case of age discrimination, the burden then shifts to the defendant to produce evidence of a non-discriminatory reason for its action which, in a RIF, will necessarily be the alleged reduction in force. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999). If the defendant meets this burden, then the plaintiff must demonstrate that the defendant's proffered reason is pretextual. *Id.* A plaintiff may illustrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002).

The presumption of discrimination "drops out of the picture" once the defendant meets its burden of production. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Nevertheless, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom in determining whether the defendant's explanation

5

for its action is pretextual. *Id*.

The district court analyzed this case as a RIF and determined that Schram had satisfied the first and third prongs of the *McDonnell Douglas* prima facie case– that he was a member of the protected class and that he was qualified for the position of division manager. Nevertheless, the district court found that Schram had failed to produce sufficient evidence that he suffered an adverse employment action and that he was wrongly singled out for discharge as required under the second and fourth prongs of the *McDonnell Douglas* framework.

### A.      Reduction in Force.

As his first argument on appeal, Schram argues that the district court erred in analyzing this case as a RIF. In *Barnes*, this Court clarified what constitutes a "true work force reduction," stating:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes*, 896 F.2d at 1465.

It is undisputed that the Company did, in fact, reduce the number of Ohio division managers from four to three. Eliminating a single job can constitute a legitimate RIF. *See Barnes*, 896 F.2d at 1465 (a RIF "occurs when business considerations cause an employer to eliminate one or more positions"). Schram argues, however,  that this case should still not be considered a RIF because, after learning of Division Manager Moffis' impending retirement, the Company had no reason to reduce the number of division manager positions.

While the Company's knowledge of Moffis' retirement may be evidence that the Company

had no need to discharge *Schram* as division manager in the RIF, it is not evidence that the Company had no need to reduce the number of division manager *positions*. Furthermore, even assuming that Schram did have some evidence that the Company did not need to reduce the number of division manager positions, that evidence cannot refute the undisputable fact that the Company did, indeed, reduce the number of division manager positions by one. Any evidence that the Company did not need to do so is irrelevant to the determination of whether a RIF occurred.

In determining whether this is a true RIF, the relevant question is whether Adler "replaced" Schram. Pursuant to *Barnes*, Adler did not "replace" Schram if 1) Adler was assigned to perform Schram's former duties in addition to other duties; or 2) Schram's former duties were redistributed among other existing employees already performing related work. *Id.*

Schram acknowledges that, when the Company's four Ohio divisions were reduced to three, there was a "realignment and enlargement" of the four former divisions. In his deposition testimony, Schram stated that responsibility for one of the depots within his former division went to Paul Dodge, the manager of the newly formed Northwest Division; and that two or three depots from Ron Moffis' former Ohio Division became part of the newly formed Southwest Ohio Division that would ultimately be managed by Adler.

Thus, the evidence before the district court was that, as head of the newly formed Southwest Ohio Division, Adler was assigned to perform Schram's former duties *in addition to other duties*, including, for example, responsibility for two or three depots from Ron Moffis' former Ohio division. Likewise, the evidence before the district court was that Schram's former duties were redistributed among the Company's existing employees already performing related work, including, for example, responsibility for at least one of Schram's former depots that was redistributed to Paul

7

Dodge. Accordingly, Schram was not "replaced" by Adler as that term has been defined by this Court, and the district court correctly analyzed the case as a RIF.

This does not mean, however, that evidence that the Company knew of Moffis' imminent retirement *before* it terminated Schram and evidence that the Company hired the 35-year old Adler *after* it terminated Schram are irrelevant to Schram's age discrimination claim. As will be explained further below, the district court should have considered these facts under the fourth prong of the *McDonnell Douglas* analysis as evidence that, in carrying out the RIF, the Company singled Schram out for discharge because of his age. In addition, this evidence should be considered in determining whether the RIF was pretext for age discrimination.

**B.      Adverse Employment Action.**

The district court held that Schram failed to establish that he was subject to an adverse employment action because he was not actually terminated from the Company but instead "voluntarily quit." The district court noted that Schram had offered no evidence that his acceptance of the new position in Middletown, Ohio would have been an adverse employment action because, while the title was a step down, there would have been no decrease in salary or benefits and there was no evidence that "it entailed significantly diminished responsibilities."

An adverse employment action under the ADEA is shown by a "materially adverse change in the terms and conditions of employment [and] must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Ford v. General Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). An adverse employment action may be established by a "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished

8

material responsibilities, or other indices that might be unique to a particular situation." *Id*.

The issue then in this case is whether, when the Company terminated Schram as division manager and offered him instead a sales manager position, this constituted a demotion. Regional Manager Danbrook testified that a sales manager manages "a smaller group of people" than a division manager. Furthermore, as sales manager, Schram would manage a single city depot – Middletown – while a division manager manages an entire state division consisting of multiple depots. Danbrook also testified that, after the RIF, managers of the larger divisions had an opportunity for higher pay and that "the larger division, the more pay." Finally, Schram had been a sales manager at the Company before being made division manager. Accordingly, Schram presented sufficient evidence from which a reasonable jury could conclude that his acceptance of the sales manager position would have constituted a demotion from his position as division manager.

C.    **Evidence that Schram was Singled Out for Discharge Because of his Age.**

Under the fourth prong of the *McDonnell Douglas* framework in a RIF case, Schram must present "additional direct, circumstantial, or statistical evidence tending to indicate" that the Company singled him out for discharge for impermissible reasons. *Scott*, 160 F.3d at 1126 (quoting *Barnes*, 896 F.2d at 1465). As discussed above, it is under this prong that the district court should have considered evidence that, at the time he terminated Schram as division manager, Regional Manager Danbrook was aware that Division Manager Moffis would soon retire. It is also here that the district court should have considered that, instead of offering Schram a larger division to manage, the Company terminated him and offered the job to Adler.

Danbrook testified that, before he discharged Schram as division manager, Moffis had given notice that he was going to retire. In fact, Moffis formally announced his retirement just the day

9

after Danbrook discharged Schram as division manager. A reasonable juror could conclude from this evidence that, at the time that he terminated Schram as division manager, Danbrook was aware that Moffis would soon retire. A reasonable juror could also conclude that, given this knowledge, even after the Company had determined to eliminate one division manager position, the Company had no need to discharge Schram as division manager. The Company could have simply offered Schram the position of division manager of the larger Southwest Ohio Division, just as it offered Dodge and Stillwagon larger divisions to manage.

Instead, however, the Company terminated Schram as division manager and hired Adler to manage the new Southwest Ohio Division after Moffis' retirement. Schram was a 57-year old with 20 years of experience at the Company and 11 years experience as division manager. Adler was a 35-year old with six years of experience as a sales manager at the Company. This circumstantial evidence is sufficient to create an issue of fact as to whether, in implementing the RIF, the Company singled Schram out for discharge as division manager because of his age. Accordingly, the district court incorrectly dismissed Schram's age discrimination claim on the basis that Schram had failed to put forth sufficient evidence to establish a prima facie case.

### D.    Pretext.

Having found that Schram presented a prima facie case of age discrimination, the next issue is whether Schram has produced sufficient evidence from which a jury could conclude that the RIF was not the true reason for his discharge as division manager but was a pretext for age discrimination. A reasonable juror could conclude from the evidence presented that, after deciding to implement the RIF, the Company had no need to terminate Schram as division manager because it was aware that another division manager would soon retire. A reasonable juror could also

10

conclude from the fact that the Company chose to terminate 57-year old Schram as division manager and offer the vacant division manager position to 35-year old Adler, that the RIF did not actually motivate the Company to discharge Schram as division manager and that, instead, the Company discharged him because of his age.

## III.  CONCLUSION

Because we conclude that Schram has presented sufficient evidence to support a prima facie case of age discrimination, the district court ruling to the contrary should be reversed. We further conclude that the district court had sufficient evidence of pretext to create a jury question on that issue.  Accordingly, we **REVERSE** the district court's Order granting the defendant summary judgment to the extent it dismissed Schram's age discrimination claim under Ohio Rev. Code § 4112.02;  we otherwise **AFFIRM** the district court; and we **REMAND** to the district court for further proceedings not inconsistent with this Opinion.