RUSSELL, Appellant,

v.

UNITED PARCEL SERVICE, Appellee.

[Cite as *Russell v. United Parcel Serv.* (1996), 110 Ohio App.3d 95.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE06–814.

Decided March 28, 1996.

96

*Charley Hess,* for appellant.

*Porter, Wright, Morris & Arthur, John M. Stephen* and *Kimberly C. Shumate,* for appellee.

PETREE, Presiding Judge.

Plaintiff, Andrea J. Russell, appeals from the decision of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant, United Parcel Service.

Plaintiff asserts a single assignment of error:

"The trial court erred at page 72 and 73 of the record when it granted the motion of appellee for summary judgment because appellant was the subject of discrimination when she was fired from her position at UPS as a supervisor-manager when UPS applied in a discriminatory manner a policy against fraternization with co-workers. Her firing was either in violation of Section 4112.02(A), Revised Code or, if that statute does not afford her a cause of action, then her firing was contrary to clear public policy which is an exception to Ohio's Employment–At–Will doctrine."

In June 1976, plaintiff entered the employ of defendant. Over the course of the next seventeen years, she was promoted through the ranks to various supervisory positions. Ultimately, she was promoted to a management position supervising thirty-two managers and between one hundred twenty-five and one hundred eighty hourly employees.

Upon her promotion to a supervisory position, plaintiff was given a copy of defendant's policies and procedures manual. Included in this manual is the "Impartial Employment and Promotion Guide," which sets forth defendant's policy regarding fraternization among employees. The policy states:

"Fraternization is discouraged throughout our organization. Fraternization which includes a supervisory or management employee may be perceived as favoritism or sexual harassment. Fraternization between a supervisor or manager and an employee is not permissible. Fraternization is clearly not in the best interest of the company, the manager or the employee."

Defendant's policy against fraternization includes both romantic involvement and merely cohabiting. Fraternization between peers is discouraged, and fraternization between management or supervisory personnel and hourly employees is "not permissible." Plaintiff acknowledged that she read and understood the policy to mean that fraternization between management personnel and hourly employees is prohibited.

In January 1993, plaintiff became romantically involved with Tani Mann, a part-time hourly employee. The two began living together in March 1993. Both plaintiff and Mann were aware of and discussed the fact that their romantic involvement and living arrangement violated defendant's policy against fraternization.

On May 16, 1993, plaintiff and Mann attended a Travis Tritt concert with two other women. While at the concert, another employee, Terry Bell, observed plaintiff and Mann engaging in a public display of affection toward each other. Terry Bell reported the incident to defendant's management.

On June 22, 1993, Tom Volta, defendant's Human Resources Manager for the Central Ohio District, confronted plaintiff about the incident at the concert. Plaintiff admitted that she was involved in a romantic relationship with Mann and that they lived together. She also admitted that she was aware that the relationship violated defendant's policy against fraternization. She further admitted that the incident at the concert had in fact occurred and that she had been drinking at the time and may have been too intoxicated to remember all of the details of her behavior. At this meeting, Volta asked plaintiff if she intended to have Mann move out of her home; plaintiff indicated that she would not force Mann to move out, but that Mann would probably resign her position with defendant.

Volta and plaintiff met again on June 29, 1993. At this meeting, Volta explained that defendant was giving her the opportunity to resign her position; however, if she chose not to resign, she would be terminated for violation of the fraternization policy and conduct unbecoming a management person. Plaintiff argued that she was being treated unfairly because other employees had violated the fraternization policy and had not been forced to choose between resignation and termination; in some instances, other policy violators had not been disciplined at all. However, plaintiff would not divulge the names of any of the other alleged policy violators. At the conclusion of the meeting, plaintiff indicated that she would need more time to consider her alternatives.

The next day, plaintiff told Volta that she would not resign her position. She was then terminated for violation of the fraternization policy. Although the exact date is unclear, Mann apparently resigned sometime between June 22 and June 30, 1993.

On December 8, 1993, plaintiff filed a complaint in the Franklin County Court of Common Pleas alleging employment discrimination based on her gender and sexual orientation. She also alleged both negligent and intentional infliction of emotional distress.

On November 15, 1994, defendant filed a motion for summary judgment. By its decision dated May 24, 1995, the trial court awarded summary judgment in favor of defendant and dismissed the case. The trial court's decision was journalized by entry dated June 2, 1995. Plaintiff has filed this timely appeal.

In her sole assignment of error, plaintiff maintains that the trial court erred in granting summary judgment in favor of defendant. In her brief, plaintiff

addresses only the issues of gender and sexual orientation discrimination, apparently declining to pursue her claims of negligent and intentional infliction of emotional distress. At oral argument, plaintiff abandoned her claim of sexual orientation discrimination and elected to proceed solely on her claim of gender discrimination.

Civ.R. 56(C) provides:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * * "

Summary judgment is a procedural device designed to terminate litigation and to avoid a formal trial where there are no issues to try. The trial court should award summary judgment with caution, being careful to resolve doubts and construe the evidence in favor of the nonmoving party. *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129. Any doubt as to the existence of a genuine issue of material fact must be resolved in favor of the nonmoving party. *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 609 N.E.2d 144. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56(E), the party opposing the motion has a duty to submit affidavits or other material permitted by Civ.R. 56(C) to show that there is a genuine issue for trial. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

All that remains is for this court to determine if there remains a genuine issue of material fact whether plaintiff's discharge from employment was motivated by discrimination based upon her gender.

Plaintiff's claim of gender discrimination was brought under R.C. 4112.02, which provides in relevant part:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the * * * sex * * * of any person, to discharge without just cause, * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

The Supreme Court of Ohio has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202, 421 N.E.2d 128, 131.

In *Frank v. Toledo Hosp.* (1992), 84 Ohio App.3d 610, 615, 617 N.E.2d 774, 777–778, the court observed:

"Sex discrimination in employment occurs when (a) an employer makes a sex differentiation a condition affecting employment or (b) an ostensibly neutral factor works disproportionate damage on the employment opportunities of one sex, and (c) such sex differentiation or ostensibly neutral factor does not fall within a recognized legal justification. * * *

"* * * *

"As to 'disparate treatment,' our courts have adopted the formula set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668, 677–679 (for claims brought pursuant to Title VII), as the analysis for judicial inquiry into complaints alleging disparate treatment in violation of R.C. Chapter 4112. * * * Although the *McDonnell Douglas* formula was developed in response to allegations of racial discrimination in hiring, both federal and Ohio courts have found the formula to be flexible enough to fit the varying factual allegations in Title VII and R.C. Chapter 4112 cases pertaining to sex discrimination and discriminatory discharge, and have modified it accordingly. * * * " (Citations omitted.)

In a Title VII case, a complainant must carry the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677. As modified to fit the allegations of the instant case, the *McDonnell Douglas* analysis requires a showing that (1) plaintiff was a member of a protected class; (2) she was discharged; and (3) a comparable unprotected employee was treated differently. Given that the trial court continued its analysis beyond establishment of a prima facie case, in our view, the trial court's decision indicates that the court found the threshold elements of plaintiff's case to have been met.

Having determined that a prima facie case has been established by plaintiff, the burden then shifts to defendant to "articulate some legitimate, nondiscriminatory reason" for plaintiff's discharge. *Id.*

In the instant case, defendant explained that the decision to terminate plaintiff was based solely on her admitted and knowing violation of the fraternization policy and conduct unbecoming a management person and was in no way based

on her gender. It is undisputed that plaintiff was aware of the fraternization policy and that her relationship with Mann violated the policy. Defendant also asserts that a review of its personnel records reveals that other management employees, both male and female, have been terminated or forced to resign from their positions because of sexual or romantic relationships with other employees in violation of the policy. Thus, defendant provided a legitimate, nondiscriminatory reason for its employment action.

The defendant having carried its burden, the burden then shifts back to plaintiff to produce evidence that defendant's stated justification is merely a pretext for unlawful discrimination. Plaintiff argues that a pretext is evident by the fact that male violators of the same fraternization policy were treated with more leniency. Specifically, plaintiff asserts that it is the practice of defendant that if a policy violation is brought to the attention of the company, male violators are given the opportunity to terminate the relationship or the hourly employee is given the opportunity to voluntarily leave.

The trial court applied the *McDonnell Douglas* framework to plaintiff's claim of gender discrimination and concluded that she failed to provide any evidence that would show that defendant's policy or its application was a pretext for discrimination. We disagree.

Plaintiff's evidence consists of her own affidavit and deposition, the deposition of Volta, the affidavit of Jane Cavarozzi, a former employee once supervised by plaintiff, and the affidavit of Lyn Rose, a current supervisor. In his deposition, Volta states that he was personally aware of previous instances where fraternization between supervisors or managers and hourly employees was discovered and admitted, but the problem was solved by allowing the parties to alter their living arrangement. Volta also recalls instances where former male supervisors were forced to resign, but only because the hourly employees with whom they had fraternized had refused to resign.

Additionally, plaintiff, Volta and Cavarozzi all indicate that male supervisors or managers who married hourly employees were not disciplined, despite readily inferable fraternization, if the hourly employee voluntarily left defendant's employ.

Plaintiff's submitted materials also provide evidence to harm her claim of gender discrimination. Specifically, Volta states that a female supervisor was terminated when the hourly employee with whom she was having a relationship refused to resign. Furthermore, plaintiff, Volta and Rose all indicated that a female supervisor was not disciplined, although she cohabited with a female hourly employee.

However, construing the evidentiary materials in favor of plaintiff, it is reasonable to infer that it has been the practice of defendant to permit male offenders of the fraternization policy to remain employed, provided the hourly employee with whom he has fraternized leaves the defendant's employ. Although Volta inquired as to plaintiff's future intention regarding her living arrangement with Mann, he did not give plaintiff the option of altering her living arrangement or terminating her relationship in order to salvage her job. Such alternatives have been made available to male supervisors or managers. Furthermore, only plaintiff was terminated after her partner voluntarily resigned. Such evidence raises the question of whether the policy was applied in a discriminatory manner. The inference that may be drawn from this evidence, when considered in a light most favorable to plaintiff, is that this different treatment creates at least a colorable showing of pretext. Because there is evidence tending to both support and harm plaintiff's gender claim, this court concludes that a genuine issue of material fact does exist, *i.e.*, whether employees of different genders were disciplined differently for violation of the same company policy. Thus, the trial court erred in finding that plaintiff failed to provide any evidence to show that defendant's policy or its application was a pretext for discrimination. Therefore, the trial court's grant of summary judgment in favor of defendant was in error. Accordingly, plaintiff's assignment of error is well taken.

For the foregoing reasons, plaintiff's assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

LAZARUS and STRAUSBAUGH, JJ., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.