Plaintiff-appellant, Kathy Dodley, appeals from the April 1, 1998 decision and entry of the Franklin County Court of Common Pleas sustaining defendants-appellees' motion for summary judgment and overruling appellant's motion for summary judgment. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court.
On September 20, 1996, Dodley filed an action against appellees, Budget Car Sales, Inc. ("Budget") and several of its managers, alleging unlawful discriminatory practices, negligent and/or intentional infliction of emotional distress, defamation, and tortious interference with employment relations. The lawsuit arose after Dodley was terminated from her sales position at Budget.
Construing the facts in the light most favorable to Dodley, the following facts are before us. Dodley began working for Budget in June 1995 after responding to a newspaper advertisement seeking inexperienced persons for work in sales. Historically, the Budget sales force was comprised almost exclusively of men, and the advertisement was part of a company-wide effort to recruit women in sales.
As part of this recruitment effort, Budget gave its female sales force every Sunday off to "be with their families" but required the male salespersons to work every other Sunday. Budget also created the "Lady Eagle" sales award for the female salesperson who sold the most cars each month. Previously, Budget simply had the "Eagle" sales award for the salesman who sold the most cars each month.
Dodley was interviewed by George Allen ("Allen"), the sales manager at the West Broad Street Budget location, who hired her the same day. Gary George ("George"), the general manager, provided Dodley with her initial training. George remarked to Dodley that she did well during her first month. In July, her first full month of employment, Dodley sold seven cars. In August she sold five, and in September she sold six. In October, Dodley increased her sales to 10.5 cars, but in November she sold only five cars, and in December she sold 7.5 cars. In January of 1996, she rebounded, sold twelve cars, and received the Lady Eagle award.[1] However, in February and March, Dodley sold only 4.5 and six cars respectively. When she was terminated in mid-April of 1996, Dodley had sold 3.5 cars for the month. Dodley had learned in January 1996 that she was expected to sell at least ten cars per month.
Dodley did not always attend training seminars, but did not know they were required. On one occasion when Dodley did not attend class, Allen became irate and told her that she should have been attending classes all along. This was the first time that she became aware that it was her responsibility to attend classes.
Budget had a six-step procedure for sales, which called for the salesperson to turn the customer over to the manager to effect the sale. Dodley did not always do this because she believed Allen had cost her a number of sales by dropping the quoted price too steeply and too readily. Dodley believed this destroyed her credibility with the customers, who then lost confidence in the dealership.
Dodley claimed that management treated the male salespersons better than the female salespersons. For example, management pressured the female sales force to sell cars, but she did not see them pressuring the male sales force. Men were given second chances and their attitude problems were overlooked, while women were spoken to in a threatening manner. Dodley indicated that if a male salesperson needed a manager, he would be attended to promptly, but the female salespersons had to wait. Allen became angry with Dodley when she took advantage of Budget's Sundays-off policy for women, and he told her that she needed to work on her day off to generate appointments.
According to Allen, Dodley developed a bad attitude when her sales were low. Dodley made a comment in front of new employees that it was possible to make more money flipping burgers than by working in sales at Budget. Dodley attributed her poor attitude to discrimination, claiming that Budget's discriminatory actions undermined her self-confidence, made her apprehensive about her job, and affected her in the performance of her job.
On April 13, 1996, Dodley confronted Allen accusing him of causing her to lose a sale by dropping the price of the car too quickly. Two days later, Allen called Dodley into his office and told her she would be better off on unemployment. Dodley asked why she was being terminated, and Allen told her that he did not like her attitude.[2] Dodley then called Gary George and met that afternoon with him concerning her termination. Allen and manager Rich Sanfillipo were brought into the meeting at some point. After George and Sanfillipo left, Allen told her they would start fresh the next day and she could return to work at noon. About ten o'clock the next morning, Dodley received a telephone call from Allen, who told her that he had reconsidered and that she should just go ahead and collect unemployment. The same day Dodley was terminated, Allen terminated a male employee for poor sales.
After her termination from Budget, Dodley went to work at Quality Chevrolet. In her deposition, Dodley claimed that Rich Sanfillipo defamed her in the presence of a manager with Quality Chevrolet:
 Rich Sanfillipo, when I was employed at Quality Chevrolet, Teri Stangle and I went over to Budget North to pick up some contracts. Rich Sanfillipo happened to have been there and looked at me, and he said, you know, what you needed to do was just transfer to a different location so you wouldn't have to be running home all the time. I said, What are you talking about? He said, You're constantly leaving work. You were never there. You were always absent, running home for your family. I said, No, I wasn't. You must be thinking of somebody else. He said, No, that's all you needed. You would have been a great salesperson if you would have been at a different lot. And Teri Stangle said the same thing, that I was — to him, that I was always there. And he said, Well, that wasn't the information he got. And walked away. (Depo. 228.)
Both sides moved for summary judgment on all claims. In its decision and entry of April 1, 1998, the trial court found that Dodley had established a prima facie case of sex discrimination but concluded that there was no evidence that Budget's practices were pretexts for discrimination or constituted harassment. With respect to the claims of negligent and/or intentional infliction of emotional distress, the trial court found that Ohio has not recognized a cause of action for negligent infliction of emotional distress in an employment setting. The trial court also determined that Dodley had not presented any evidence of extreme and outrageous conduct on the part of Budget or its managers. With respect to the claim of defamation, the trial court found that Dodley had not pointed to any evidence that she suffered shame or ridicule or that the statement affected her employment in any way. With respect to Dodley's claim of wrongful discharge, the trial court found that Dodley had not pointed to any evidence other than the alleged sex discrimination that indicated her termination was contrary to law. Finally, with respect to her claims of tortious interference with employment relations, the trial court found that Dodley had failed to point to any evidence in the record that would support the claim.
Dodley appealed, assigning as error the following:
 1. The trial court erred in granting summary judgment in favor of all defendants on all claims.
 2. The trial court erred in denying plaintiff-appellant summary judgment on all of her claims against all of the defendants.
Before addressing the merits of Dodley's argument, we must consider the applicable standard of review. Civ.R. 56(C) states that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn.Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id.
Appellate review of summary judgments is de novo. Koos v.Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588;Midwest Specialties, Inc. v. Firestone Tire Rubber Co.
(1988), 42 Ohio App.3d 6, 8. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See Dresher, supra; Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38,41-42.
With respect to Dodley's claims of sex discrimination, R.C.4112.02(A) provides that it is an unlawful discriminatory practice for any employer "because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." The Ohio Supreme Court has held that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112. Plumbers Steamfitters Commt. v. Ohio CivilRights Comm. (1981), 66 Ohio St.2d 192, 196.
In disparate treatment claims, Ohio courts have adopted the formula set forth by the United States Supreme Court inMcDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802,93 S.Ct. 1817, 1824-1826 (for claims brought pursuant to Title VII), as the analysis for judicial inquiry into complaints alleging disparate treatment in violation of Chapter 4112.Frank v. Toledo Hosp. (1992), 84 Ohio App.3d 610, 615. Although the McDonnell Douglas formula was developed in response to allegations of racial discrimination in hiring, both federal and Ohio courts have found the formula to be flexible enough to fit the varying factual allegations in Title VII and R.C. Chapter 4112 cases pertaining to sex discrimination and discriminatory discharge, and have modified it accordingly. Id.
Under this standard, a plaintiff must carry the initial burden of establishing a prima facie case of discrimination.McDonnell Douglas, supra, at 802, 93 S.Ct. 1824. As modified to fit the allegations of this case, Dodley must show that: (1) she was a member of a protected class; (2) she was discharged; and (3) a comparable unprotected employee was treated differently. See Russell v. United Parcel Serv. (1996),110 Ohio App.3d 95, 100.
With respect to her claims of sex discrimination, Dodley argues that Budget's policy of giving females every other Sunday off and awarding the "Lady Eagle" created resentment among the male salespersons leading to a hostile work environment, which undermined her ability to sell automobiles. Second, Dodley claimed that managers Allen and Sanfillipo harassed her when they put pressure on her to make sales. She described complaining to Allen that he demanded, rather than politely asked, her to perform her job duties: "I said, I know for a fact, you can ask Jack Keller because he overheard you demanding things of me that you politely asked other people to do instead of demanding them to do." (Dodley Depo. at 165, 234.) Finally, Dodley further acknowledged that her claim of harassment on the basis of sex was limited as follows:
 Q. I don't mean to throw your complaints into a small category if you think that they're broader, but so that I understand what you're saying, in terms of sexual harassment, what you're saying is that management was really getting on the women to sell the cars when you didn't see them getting on the men; is that right?
 Yes, that's fair to say. (Dodley Depo. at 170-171.)
If the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant to articulate some legitimate nondiscriminatory reason for plaintiff's discharge. Here, Budget's articulated reasons for Dodley's termination were poor sales and poor attitude. The evidence shows that, while Dodley was employed at Budget, two males, Bob Hunter and Ron Curry, were terminated for poor sales, and on the same day Dodley was terminated, Budget also terminated a male, John King, for poor sales. If the defendant carries its burden, the burden then shifts back to plaintiff to produce evidence that defendant's stated reasons are merely a pretext for discrimination. Here, Dodley argues that pretext is evident as her sales and attitude were no worse than other salespersons. In her deposition, Dodley states that her sales were even with those of John King, and that Hunter and Curry sold fewer cars than she did. (Depo. at 117.) Dodley also states in her affidavit that John King had the worst attitude among the entire sales force, yet his poor attitude and poor sales were tolerated for a long time. Some of Dodley's statements appear inconsistent in that in her affidavit she claimed to have "above average" sales, and in her deposition she states her sales were equal to John King. Yet, in her affidavit she also acknowledges that King had poor sales, and management tolerated his poor sales. Although asserting that her sales were above average, nowhere in the record is there any evidence as to what average sales were or how many cars any salesperson other than Dodley sold.
Moreover, Dodley admitted in her affidavit that she made the remark about flipping burgers and that her attitude had declined. However, she asserts, without any specific facts, that male employees were not disciplined for making such comments. These allegations do little to bolster her case, as the undisputed evidence is that John King was terminated the same day as Dodley. In essence, Dodley admits that both she and a similarly situated male, John King, had poor sales and poor attitudes, and they were both terminated on the same day. Having failed to show that she was treated differently than a similarly situated male and having failed to carry her burden of establishing pretext, Dodley's claim of sex discrimination must fail.
Because Dodley's claims of wrongful discharge and tortious interference with employment relations are dependent on a finding that the appellees engaged in unlawful discriminatory practices in violation of R.C. 4112.02, they too must fail.
With respect to her defamation claim, Budget contends that Dodley failed to present a prima facie case of defamation as she failed to produce any evidence of damages or malice. Dodley however argues that she presented a prima facie case of per se
defamation in which proof of damages and malice is not required. We agree.
Defamation is a false publication causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business. Matalka v. Lagemann (1985),21 Ohio App.3d 134, 136. In order to prevail on a claim of defamation, a plaintiff must establish four elements: (1) a false and defamatory statement about the plaintiff; (2) publication to a third party without privilege; (3) fault or at least negligence by the defendant; and, (4) that the statement was either defamatory per se or caused special harm to the plaintiff. Akron-Canton Waste Oil, Inc. v. Safety-Kleen OilServ., Inc. (1992), 81 Ohio App.3d 591.
Defamation may be either per se or per quod. Slander per se means that the slander is accomplished by the very words spoken. Leal v. Holtvogt (1998), 123 Ohio App.3d 51, 81. A statement that "tend[s] to injure one in one's trade or occupation" will be considered slander per se. McCartney v.Oblates of St. Francis deSales (1992), 80 Ohio App.3d 345, 353;Leal, supra, at 82. Whether a statement is slander per se or whether a publication is merely capable of being interpreted as defamatory, i.e., defamation per quod, is a question of law.Matalka, supra. If the statement is found to be actionable perquod, the plaintiff must allege and prove damages. McCartney,supra, at 354. When a statement is found to be slander per se,
both damages and actual malice are presumed to exist. Westroppv. E.W. Scripps Co. (1947), 148 Ohio St. 365 (paragraph four of the syllabus); King v. Bogner (1993), 88 Ohio App.3d 564,567-568; McCartney, supra.
Budget also raises the defense that the statement was made in the "employment context" and therefore qualifiedly privileged, citing Evely v. Carlon Co. (1983), 4 Ohio St.3d 163. We disagree. In Evely, the statements attributed to officers of the defendant were made concerning the activities of the appellant arising out of his employment status with the company. None of the statements were directed to the appellant as an individual separate and apart from his employment. As such, the Ohio Supreme Court determined that the statements were afforded a qualified privilege concerning matters of common business interest between the parties. Id. at 165. Here, the statement was made to Dodley in the presence of a manager of another dealership where Dodley was employed. The statement was not made in the context of any duty on the part of Sanfillipo to inform a prospective employer of an applicant's qualifications. Under the facts as set forth by Dodley, the statement was not privileged.
Here, Dodley's claim of defamation is premised upon statements made by Rich Sanfillipo to Dodley in the presence of a Terri Stangle, a manager with Quality Chevrolet. Sanfillipo is alleged to have said, "You're constantly leaving work. You were never there. You were always absent, running home for your family." (Dodley Depo. at 228.)[3] We find that these statements constitute slander per se in that Sanfillipo was accusing Dodley of constantly being absent from work in order to attend to her family. The statements in and of themselves tend to injure Dodley in her occupation as an automobile salesperson, as one cannot sell cars from a lot if one is constantly absent. As such, Dodley was not required to prove damages or actual malice in order to survive Budget's motion for summary judgment.
With respect to her claim of intentional infliction of emotional distress, Budget argued that Dodley made no showing of extreme or outrageous conduct, and therefore summary judgment in favor of Budget was appropriate.[4] To prevail on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate: (1) that the defendant intended to cause the plaintiff to suffer serious emotional distress; (2) that the conduct of the defendant was extreme and outrageous; and (3) that the defendant's conduct was the proximate cause of serious emotional injury. Phung v. Waste Mgt., Inc. (1994),71 Ohio St.3d 408, 410. Behavior that rises to the level of intentional infliction of emotional distress must be more than aggravating. Only conduct that is truly outrageous, intolerable, and beyond the bounds of decency is actionable; persons are expected to be hardened to a considerable degree of inconsiderate, annoying, and insulting behavior. Yeager v.Local Union 20 (1983), 6 Ohio St.3d 369, 374.
None of the conduct attributed by Dodley to Budget or the managers could be characterized as extreme or outrageous. Exhorting salespersons to sell more cars, even if not done politely, is not the type of extreme or outrageous conduct that would support a claim for intentional infliction of emotional distress. Summary judgment in favor of appellees was appropriate on this claim.
Based on the foregoing, appellant's first assignment of error is sustained in part and overruled in part, the second assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
Judgment affirmed in part, reversed in part, and causeremanded.
BOWMAN and BRYANT, JJ., concur.
[1] In December 1995, Tammy Green outperformed all salespersons (male and female) and, over the objections of some of the men, received both the Eagle and Lady Eagle awards.
[2] In her deposition, Dodley stated that Allen did not give her a reason for her termination other than he did not like her attitude. In her affidavit attached to her memorandum contra appellant's motion for summary judgment, Dodley states that Allen informed her that she was being terminated for poor sales, and when she protested that her sales were not below average, Allen then stated that her poor attitude was behind her termination. Allen stated in his affidavit that he told Dodley she was terminated because of bad attitude and poor sales.
[3] Budget has assumed, for purposes of summary judgment only, that Sanfillipo made the statements in question.
[4] Dodley has waived her claim of negligent infliction of emotional distress by not arguing it on appeal. App. R. 12(A)(2).