FRANTZ, Appellant,

v.

The BEECHMONT PET HOSPITAL et al., Appellees.

[Cite as *Frantz v. Beechmont Pet Hosp.* (1996), 117 Ohio App.3d 351.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960018.

Decided Dec. 31, 1996.

352

*Mark J. Byrne*, for appellant.

*Ivan L. Tamarkin*, for appellees.

GORMAN, Presiding Judge.

The plaintiff-appellant, Evelyn C. Frantz, appeals from the order of trial court granting summary judgment to the defendants-appellees, the Beechmont Pet Hospital and Stewart Smith, D.V.M., on her claim that she was terminated from her employment in contravention of R.C. 4112.02(A) and 4112.99 because she was female and became pregnant. In her sole assignment of error she asserts that the trial court erred by concluding that there was no evidence of record from which a reasonable person could conclude that the reason given for her discharge was pretextual. We agree and thus reverse the trial court.

## I

Although Frantz was approximately two months pregnant at the time she applied for the position of receptionist at the hospital in January 1993, she did not disclose this fact in her application or during a subsequent interview. About one week after starting work, she told Smith of her pregnancy. According to Frantz, she conveyed to Smith that she would, in her own words, "understand if he didn't want me to work or if he only wanted me to work part-time."

By Frantz's own admission, Smith told her that her pregnancy did not present a problem and to let him know when she would be going on maternity leave.

Sometime around June 16, following a period of dizziness, Frantz was advised by her obstetrician-gynecologist to begin maternity leave. When she reported this to Smith, he acquiesced without apparent objection, and she went on maternity leave the next day, June 18.

According to Frantz, there was no discussion at that time between her and Smith or anyone else concerning a possible return date. However, Smith and Amy Parker, the office manager, stated that before she left on maternity leave on June 18 Frantz expressed an intention to return to work on August 1, and that she was consequently rescheduled to return to work on August 2.

Frantz testified that her next conversation with anyone at work occurred on July 7, the date that she delivered the baby, at which time she called to tell her co-workers of its sex and weight. Two weeks later she brought the baby into work. Smith was not present on the occasion, but Parker was. Parker gave to Frantz a gift that Smith had bought for her and asked when she thought she would be able to return to work. According to Frantz, she told her that she would not know until she had seen her doctor on August 19. She denied speaking to anyone else concerning a possible return date or ever stating that she would be back earlier.

Frantz testified that she could not have returned at the time because she was still bleeding very heavily. She recounted that she received a telephone inquiry from Parker approximately two weeks before her August 19 doctor's appointment concerning a possible return date. Frantz stated that she advised Parker that she could not return until after she had seen her doctor, and that Parker indicated that this was "fine" and that she should recontact the hospital after the appointment.

Parker disputed Frantz's version of events after her July visit to the hospital with her newborn. According to Parker, she called Frantz on July 28, leaving a message on her answering machine requesting information regarding her scheduled return to work on August 2. Parker stated that when she did not receive an answer, she called Frantz the next day and this time reached her and made the same request. She stated that Frantz told her that she would call her back the next day with a definitive answer, but did not do so.

According to Frantz, she was advised by her doctor on August 19 that she was ready to go back to work. On the evening of August 19, Frantz telephoned Smith and advised him that she wanted to start back to work the next day. The next day, according to Frantz, she had a conversation with Parker in which she was informed that it was a slow season and that, essentially, there would be no work for her until March of the following year. Frantz testified that Parker also indicated that she could not guarantee whether the work would be full-time. According to Frantz, she had no further contact with the hospital and discovered

that she had been terminated only after she unsuccessfully applied for unemployment benefits.

In her affidavit, Parker stated that Frantz was terminated effective August 15 because her failure to communicate with the hospital regarding her return date caused scheduling problems and was ultimately interpreted as lack of interest in continuing her employment. Contrary to Frantz's recollection of events, Parker stated that she informed Frantz in their discussion on August 19 that she was terminated.

Frantz's duties were reallocated to two part-time nonpregnant female employees, both of whom were elevated to full-time status.

## II

As noted, Frantz raises only a single assignment of error: that from the evidence just summarized there were sufficient facts, drawing all inferences in her favor as is required under Civ.R. 56(E), from which one could reasonably conclude that the reason given for her termination was pretextual, and that she was, in truth, discharged because Smith and the hospital unlawfully discriminated against her by failing to allow her a reasonable period of maternity leave.

R.C. 4112.02(A) provides that the following constitutes an unlawful discriminatory practice:

"For any employer, because of the * * * sex of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

R.C. 4112.01(B) states:

"For the purposes of division (A) to (F) of section 4112.02 of the Revised Code, the terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, any illness arising out of and occurring during the course of pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work * * *."

According to Ohio Adm.Code 4112–5–05(G):

"(2) Where termination of an employee who is temporarily disabled due to pregnancy is caused by an employment policy under which insufficient or no maternity leave is available, such termination shall constitute unlawful sex discrimination."

■ A victim of such conduct has a private right of action under R.C. 4112.99. In *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202, 421 N.E.2d 128, 131, the Ohio Supreme Court held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.,* Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112."

■ As noted recently by the Franklin County Court of Appeals, "an employer need not have a policy allowing unlimited maternity leave: an employer is required only to have a reasonably adequate policy of maternity leave which should be applied on the same terms and conditions as for other disabilities." *Frazier v. Practice Resource Mgt. Group, Inc.* (June 27, 1995), Franklin App. No. 95APE01–46, unreported, 1995 WL 390792. As further observed by the same court, the Pregnancy Discrimination Act, Section 2000e, Title 42, U.S.Code, "does not require accommodation of pregnant women which amounts to preferential treatment." *Id.,* citing *Armstrong v. Flowers Hosp. Inc.* (M.D.Ala.1993), 812 F.Supp. 1183.

We note initially that Smith and the hospital do not assert in their arguments that Frantz was fired because she attempted to take a longer maternity leave than hospital policy allowed. They assert, rather, that she was terminated because she failed to adequately communicate to the hospital when she would be returning. We are, therefore, not confronted with the issue of the adequacy of the length of the hospital's maternity leave. Rather, as briefed and argued by the parties, this case is concerned solely with the issue of whether Frantz presented sufficient evidence to create a factual issue of whether the hospital's stated reason for discharging her—her alleged failure to communicate her plans for returning to work—was pretextual.

■ In order to support a claim of sex discrimination in employment, the employee is required first to establish a prima facie case by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Marvel Consultants v. Ohio Civ. Rights Comm.* (1994), 93 Ohio App.3d 838, 639 N.E.2d 1265. See, also, *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272. A prima facie case is established when the evidence demonstrates that the employee was pregnant, discharged, and replaced by nonpregnant personnel. *Marvel, supra,* 93 Ohio App.3d at 841, 639 N.E.2d at 1267. Once the evidence establishes these three elements, the burden shifts to the employer to articulate a nondiscriminatory reason for the discharge. *Id.* The burden then switches back to the employee to demonstrate by a preponderance of the evidence that the reasons proffered by the employer are pretextual. *Id.; McDonnell Douglas Corp., supra; Frank v. Toledo Hosp.* (1992), 84 Ohio App.3d 610, 616, 617 N.E.2d 774, 778.

Frantz contends that the evidence was sufficient to establish a prima facie case because she was pregnant during the events leading to her discharge, and because her workload after she was discharged was absorbed by two nonpregnant female employees who were elevated from part-time to full-time. Smith and the hospital, however, do not concede that even a prima facie case was established on these facts. While not disputing that her workload was reallocated to two other nonpregnant employees, they argue that legally this does not constitute replacement since no one new was hired. Furthermore, they argue that it is necessary for Frantz to have demonstrated disparate treatment—in other words, to show that she was treated differently compared to nonpregnant employees—before a prima facie case can be established.

In support of their argument that Frantz was not replaced in the sense necessary to trigger a prima facie case of sex discrimination against them, Smith and the hospital cite only one case, *Barnes v. GenCorp, Inc.* (C.A.6, 1990), 896 F.2d 1457, without explanation for how it supports their position. *Barnes* is inapposite, however, because it falls into a distinct category of cases involving a work reduction, or corporate downsizing. Obviously, when a business is in a process of deliberately downsizing for legitimate financial reasons, economies of scale, an inference of discrimination does not automatically arise simply because one's job is terminated and the job duties redistributed among the reduced work force, even when that person is a member of a distinct age group or gender. *Id.* at 1465. See *LaGrant v. Gulf & Western Mfg. Co.* (C.A.6, 1984), 748 F.2d 1087, 1090 ("mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a *prima facie* case of age discrimination"); *McMahon v. Libbey Owens–Ford Co.* (C.A.6, 1989), 870 F.2d 1073; *Sahadi v. Reynolds Chem.* (C.A.6, 1980), 636 F.2d 1116, 1118. Rather, in a work-force-reduction case, where there exists already a legitimate reason for the discharge, it is incumbent upon the plaintiff to produce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out plaintiff for discharge for impermissible reasons." *Barnes, supra,* at 1457.

The present case clearly does not fall within the ambit of a work-force-reduction case. Neither Smith nor the hospital alleges this as the reason for Frantz's termination. There was, in fact, no reduction in the work force; rather, two part-time employees were elevated to full-time to take Frantz's former full-time position. It ignores practical reality to suggest, as do Smith and the hospital, that in a case not involving a work-force reduction an employee is not replaced so long as the company does not hire somebody new. To adopt such a position would allow a company with a flexible work force merely to reshuffle its staff to avoid a prima facie case of discrimination.

We hold, therefore, that Frantz presented sufficient evidence that she was replaced in the work force by nonpregnant personnel, and that consequently, in accordance with *McDonnell Douglas* and *Marvel*, she established all the elements of a prima facie case of sex discrimination. Contrary to the assertion by Smith and the hospital, there is no further requirement that Frantz present evidence of additional disparate treatment before establishing a prima facie case.[1] Were this the law, it would be virtually impossible for a plaintiff who is either the sole employee or the first-time victim of an employer's discrimination to prove a prima facie case. As explained by the Supreme Court in *Furnco Constr. Corp. v. Waters* (1978), 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–2950, 57 L.Ed.2d 957, 967, a prima facie case under *McDonnell Douglas* raises its own inference of discrimination "because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors * * * [since] more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting."

■ As noted, once a prima facie case of sex discrimination has been established, the burden switches to the employer to articulate nondiscriminatory reasons for Frantz's discharge. Smith and the hospital accomplished this by alleging that Frantz was terminated because she failed to contact the hospital regarding her scheduled return to work. The burden then shifted back to Frantz to show that this reason was pretextual. As explained by the court in *Manzer v. Diamond Shamrock Chem. Co.* (C.A.6, 1994), 29 F.3d 1078, Frantz was required to prove either (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the discharge, or (3) that the proffered reason was insufficient to motivate the discharge. Frantz chose the second course, attacking the factual basis for her discharge by directly refuting the accusation that she failed to communicate with the hospital regarding the date of her return, and by alleging that it was understood between her and the hospital that she would not be returning until after her appointment with her obstetrician-gynecologist on August 19, 1993.

---

1. The case cited for this proposition by Smith and the hospital, *Frank v. Toledo Hosp.* (1992), 84 Ohio App.3d 610, 617 N.E.2d 774, involved a hospital employee with a low rubella titer who could not receive the rubella vaccine because she was pregnant and was therefore discharged. Unlike the present case, in which the decision to terminate Frantz was discretionary and had to do with her own behavior, the plaintiff in *Frank* was terminated subject to the hospital's *mandatory* policy that required all employees with a low rubella titer to be vaccinated or to be terminated. Because the plaintiff in *Frank* could not show that she was treated differently than other nonpregnant employees with a low rubella titer, the court held that she had failed to present a prima facie case. The court noted, however, that it was modifying the *McDonnell Douglas* analysis to fit the particular allegations of that case.

Although Smith and the hospital argue emphatically that Frantz's allegations fail to create a genuine issue of material fact,[2] we fail to see how they cannot. Smith and the hospital claim that Frantz was fired for failing to communicate her return plans; she says that she did. Granted, it seems unlikely that an employer who first declines an employee's offer to resign when she discloses her pregnancy, readily acquiesces in her taking maternity leave, and then gives her a gift once the child is born—and who has no prior history of discriminating against pregnant employees—would later make up a reason to fire her out of some animus or unwillingness to reasonably accommodate her postpartum recovery. The purpose of summary judgment, however, is not to weigh a plaintiff's chances at trial based upon the credibility of his or her evidence but, rather, to determine if there is any factual conflict which would preclude judgment in favor of the moving party as a matter of law. With respect to this determination, moreover, the nonmoving party is entitled to have all reasonable inferences drawn in her favor. Civ.R. 56(E). In other words, for the purposes of summary judgment, Frantz was entitled to have her version of events believed—that she did, in fact, communicate her plans to the hospital and was always told that they were "fine" with her superiors.

We hold, therefore, that, under the constraints of Civ.R. 56(E), there was evidence of record from which one could reasonably conclude that the reason given for Frantz's discharge was pretextual. Furthermore, should this conclusion be reached, one could then circumstantially infer from the giving of a false reason, and her replacement by nonpregnant personnel, that the real reason for Frantz's discharge was discriminatory. Frantz's sole assignment of error is, therefore, well taken.

Accordingly, the judgment of the trial court is reversed, and this cause is remanded to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

PAINTER and SUNDERMANN, JJ., concur.

---

2. At one point in their brief, Smith and the hospital state that Frantz "did not present any evidence to the trial Court which would support that the proffered reason of the Beechmont Pet Hospital had no basis in fact." This statement is almost incredible since the entire thrust of Frantz's deposition was a refutation of the factual charge that she failed to communicate with the hospital.