DECISION
Appellant, E. Marlene Johnson, was employed by Central State University ("CSU"), from February 1988 until she was laid off in February 1996, from her position as the director of materials management. At the time of appellant's termination, twenty percent of the personnel at CSU were laid off as the result of a financial exigency plan due to the financial crisis facing CSU in 1995 and 1996.
Appellant filed a complaint against CSU in the Ohio Court of Claims alleging breach of contract, discrimination based upon gender and negligent infliction of emotional distress. The matter was bifurcated and tried on the issue of liability in October 1998. The Ohio Court of Claims denied appellant's contract claim, determined that appellant established a prima facie case of discrimination but found the prima facie case was rebutted by legitimate nondiscriminatory reasons for the adverse employment actions. The court found that appellant had failed to prove that the legitimate reason was a pretext for discrimination and denied her claim. The court also denied her claim for emotional distress based upon a lack of sufficient evidence of intentional or negligent conduct.
Appellant filed a notice of appeal and raised the following assignment of error:
 IT WAS ERROR FOR THE COURT OF CLAIMS TO DETERMINE CSU MET ITS BURDEN OF PROVIDING A LEGITIMATE NONDISRIMINATORY REASON FOR JOHNSON'S TERMINATION.
In her assignment of error, appellant does not contest the rulings by the trial court that denied her contract claim and her negligent infliction of emotional distress claim, but does contend that the trial court erred in finding that CSU met its burden of providing a legitimate, nondiscriminatory reason for appellant's termination.
R.C. 4112.02(A) prohibits gender discrimination and provides, in pertinent part, as follows:
It shall be an unlawful discriminatory practice:
 (A) For any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
The definition of employer in R.C. 4112.01(A)(2) includes "the state, any political subdivision of the state." Thus, the state is prohibited from discriminating against its employees on the basis of gender.
Ohio courts have held that, when interpreting R.C. 4112, it is appropriate to look at analogous federal statutes. See Wooten v.Columbus, Div. of Water (1993), 91 Ohio App.3d 326, 334. "In order to prevail in an employment discrimination case, the plaintiff must prove discriminatory intent." Mauzy v. Kelly Services, Inc.
(1996), 75 Ohio St.3d 578, 583. Both a direct and indirect method of proof, may be utilized to establish discriminatory intent in a discrimination case. Appellant argues that the Court of Claims erred in its application of the indirect method. Absent direct evidence of discriminatory intent, a plaintiff may seek to establish discriminatory intent indirectly through the analysis set forth in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, followed by the Ohio Supreme Court in Plumbers SteamfittersCommt. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192, 197.
In order to establish a prima facie case of gender discrimination, appellant was required to demonstrate that: (1) she was a member of a statutorily protected class; (2) that she was discharged; (3) that she was qualified for the position; and (4) that she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class. If a plaintiff has set forth a prima facie case of gender discrimination, the burden then shifts to the defendant to set forth a legitimate, nondiscriminatory reason for terminating plaintiff's employment. Plumbers Steamfitters, supra. The Court of Claims found that appellant had set forth a prima facie case of gender discrimination, but also found that CSU had provided a legitimate, nondiscriminatory reason for the termination.
The evidence demonstrates that appellant was a woman who was qualified for the position as director of materials management. She had an undergraduate degree in marketing and a master's degree in science and administration. She had been working in the department since 1988, and had been the assistant director since 1990, and became the director in 1994. Although the deposition testimony of Dr. John Williams indicates that the president of the university was not happy with appellant's work, appellant had never received a poor performance review nor been reprimanded or disciplined. Appellant was terminated from her position in 1996, and a man she had previously supervised, Tedrick Fryman, became the acting director.
This case involves a distinct category of cases in which a corporate reorganization or reduction in work force occurs. In such cases, courts have required a demonstration of additional direct, circumstantial or statistical evidence that the work force reduction is not the reason for the discharge and that the employer singled out the plaintiff for discharge for impermissible reasons. See Frantz v. Beechmont Pet Hosp. (1996), 117 Ohio App.3d 351,358, citing Barnes v. GenCorp., Inc. (C.A.6, 1990),896 F.2d 1457, 1465, certiorari denied (1990), 498 U.S. 878. See, also,LaGrant v. Gulf Western Mfg. Co. (C.A.6, 1984), 748 F.2d 1087,1090; McMahon v. Libbey Owens-Ford Co. (C.A.6, 1989),870 F.2d 1073.
 * * * A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties. * * * [Barnes,
at 1465.]
The evidence establishes that CSU terminated appellant's employment pursuant to a gender-neutral plan to reduce expenditures due to the financial crisis facing CSU. The Board of Trustees declared a financial exigency on January 1996, because CSU's operating budget for fiscal year 1994 demonstrated an approximate $6,400,000 deficit. CSU was required to demonstrate a $600,000 surplus at the end of fiscal year 1996, or it would experience a reduction in its supplement which would not allow CSU to operate. The Board of Trustees required the president of the university to compile a plan to reduce expenditures and create a surplus. Appellant was terminated according to this plan. The deposition testimony of Dr. Williams, the executive assistant to the president of CSU, demonstrates that CSU experienced a twenty-percent reduction in personnel and the employees who remained received a reduction in pay. The terminations were not dependent on performance but merely upon money considerations. The goal of the plan was to lay off as few people as possible, while saving as much money as possible. At the time of her termination, appellant was earning approximately $45,000 per year, and Fryman was earning approximately $23,000. Fryman performed appellant's previous duties in addition to his own, since he and another employee were the only employees remaining in the department.
Appellant argues that sufficient evidence of discriminatory intent was provided. Appellant testified that Dr. Smith, the president of the university, had twice made the comment that appellant was a woman who could not perform her job. She felt that he was categorizing her by gender. She also testified that, on a third occasion, he had stated that she could not perform her job and he would have her paycheck. The Board of Trustees' Resolution, which declared the financial exigency, provided that Dr. Smith was to deliver a report containing recommendations for reducing expenditures. Appellant argues that, since Dr. Smith was a primary decision-maker and made derogatory comments concerning women, this was evidence that the reason CSU provided for appellant's termination was pretextual.
The Court of Claims found that such stray remarks in the workplace, which are unrelated to the decision-making process, are insufficient to demonstrate that an employer relied upon illegitimate criteria in making the decision. We agree. Appellant has failed to demonstrate that the comments which related to gender were related to the decision to terminate her employment.
Appellant argues that, since she was replaced by her subordinate, a male who was less qualified than she, also constitutes evidence of pretext. However, "when a business is in a process of deliberately downsizing for legitimate financial reasons, economies of scale, an inference of discrimination does not automatically arise simply because one's job is terminated and the job duties redistributed among the reduced work force, even when that person is a member of a distinct age group or gender."Frantz, at 358, citing Barnes, supra. In this case, appellant has not provided sufficient additional direct, circumstantial, or statistical evidence that CSU singled her out for discriminatory reasons. Thus, appellant has not proven a prima facie case of discrimination. Appellant's assignment of error is not well-taken.
For the foregoing reasons, appellant's assignment of error is overruled, and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
TYACK and BRYANT, JJ., concur.