JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Keddrick Raye McKinley ("McKinley") appeals from a decision of the trial court that granted defendant-appellee Standby Screw Machine Products Company's ("Standby") motion for summary judgment on McKinley's claims. Upon review, we conclude that there are genuine issues of material fact and that Standby is not entitled to judgment on McKinley's claims. Accordingly, we reverse and remand the trial court's decision.
{¶ 2} A review of the record reveals the following facts: McKinley was hired as an electrical maintenance person at Standby in 1994. On his first day on the job, he was informed by his supervisor William Horvath ("Horvath") that his predecessor had been electrocuted while working on electrical circuits. At that time, McKinley told Horvath that Standby was in violation of federal law which required a lockout/tagout system to protect employees from similar injuries.
{¶ 3} On September 13, 1995, McKinley was performing electrical repairs on a screw machine when he was injured. Specifically, McKinley suffered electrical shock and burns to his face and arm after another employee turned the machine on while he was using contact cleaner on the wires. McKinley claims that he was injured because Standby had not instituted a lockout/tagout procedure.
{¶ 4} On October 20, 1995, McKinley returned to work. Upon returning, McKinley again complained to Horvath about the lack of lockout/tagout procedures. On October 24, 1995, Horvath ordered a lockout/tagout kit. McKinley claims that he also requested training for the employees but that Standby denied this request. McKinley also states that he made a complaint to OSHA.
{¶ 5} On December 30, 1995, McKinley was terminated from Standby. In a memo dated the same day, Horvath cited the following reasons for McKinley's termination: his lack of ability to perform work assignments; his carelessness on the job; and instances of slacking off on the job. According to Horvath, a series of events, including a fan falling out of the wall and McKinley getting shocked on a machine several times, were the reasons for McKinley's termination. McKinley claims that he was terminated for making complaints about the safety in the plant.
{¶ 6} On January 10, 1996, McKinley filed a complaint with OSHA concerning Standby's lack of a lockout/tagout procedure. Standby was notified of this complaint on January 26, 1996. Standby was subsequently cited for failure to have a lockout/tagout procedure. On March 2, 2000, McKinley filed this complaint against Standby alleging claims of intentional employment tort and retaliatory discharge.[1]
{¶ 7} On November 9, 2000, Standby filed a motion for summary judgment asserting that McKinley was unable to meet all of the requirements for a claim of common law intentional employment tort and that a claim for retaliatory discharge under Ohio's Whistleblower Statute could not be asserted because McKinley failed to comply with OSHA regulations. Standby also asserted that McKinley was unable to meet all of the elements of common law retaliatory discharge. In response, McKinley claimed that he had met the requirements of common law intentional employment tort and common law retaliatory discharge.
{¶ 8} On August 1, 2001, the trial court filed an opinion and judgment entry granting Standby's motion for summary judgment. It is from this decision that McKinley now appeals and raises three assignments of error.
 I. {¶ 9} THE TRIAL COURT ERRED WHEN IT IMPROPERLY DETERMINED THAT THERE WAS NO GENUINE ISSUE OF FACT CONCERNING THE SECOND PRONG OF THE FYFFE V. JENO'S, INC. TEST FOR EMPLOYER INTENTIONAL TORT.
{¶ 10} In his first assignment of error, McKinley claims that the trial court erred in granting summary judgment in favor of Standby because genuine issues of material fact existed concerning his claims for intentional tort.
{¶ 11} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if, as a matter of law, no genuine issues exist for trial."Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378, citingDupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120.
{¶ 12} Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. WillisDay Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
{¶ 13} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
{¶ 14} With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in Standby's favor was appropriate.
{¶ 15} In an action against an employer for intentional tort, a plaintiff must show:
 {¶ 16} (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
{¶ 17} Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115,570 N.E.2d 1108, paragraph one of the syllabus.
{¶ 18} The trial court held that McKinley could not satisfy the second prong of Fyffe, supra, because he did not produce any evidence that Standby was aware that its failure to have the lockout/tagout procedure was substantially certain to cause harm to McKinley or any of its employees. We disagree.
{¶ 19} The burden imposed on an employee to prove that any harm was a substantial certainty is a substantial burden. However, in motions for summary judgment the burden is on the moving party. Dresher v. Burt
(1996), 75 Ohio St.3d 280. That burden is to show that no genuine issue of material fact exists concerning an issue on which the employee's claim depends. Wolf v. McCullough-Hyde Memorial Hosp., Inc. (1990),67 Ohio App.3d 349. All doubts must be resolved in favor of the employee. Hampton v. Trimble (1995), 101 Ohio App.3d 282, 286.
{¶ 20} Here, the evidence presented for and against Standby's motion for summary judgment demonstrates the following facts: that another employee had been electrocuted at the plant and that Standby was aware of that event; that McKinley told Horvath on at least two occasions that Standby's failure to have a lockout/tagout procedure was unsafe and in violation of federal law; that McKinley regularly worked on electrical units, had previously been shocked, and that Standby was aware of these events; and that Horvath was not familiar with the purposes of a lockout/tagout procedure until after McKinley's accident.
{¶ 21} Where an employer has failed to install a safety device that might have prevented an injury, courts may consider that fact in determining a motion for summary judgment on intentional employment tort claims. Busch v. Unibilt Indus. (Sept. 22, 2000), Montgomery App. No. 18175, unreported.
{¶ 22} Here, McKinley was assigned by his employer to a job which put him at a direct risk of harm from being electrocuted. This direct risk of electrocution, coupled with the record of a prior, similar accident, the lack of lockout/tagout procedures, and the serious injury to McKinley that resulted, create doubts concerning the summary judgment relief that Standby requested and the basis for it. We find that the evidence is in conflict concerning whether Stanby's refusal to implement lockout/tagout procedures made the harm that McKinley suffered a substantial certainty. Accordingly, we find that the trial court erred when it held that McKinley cannot present evidence that satisfies the second prong of theFyffe test.
{¶ 23} McKinley's first assignment of error is well-taken.
 II. {¶ 24} THE TRIAL COURT ERRED IN FAILING TO CONSIDER THE OSHA INVESTIGATIVE REPORT FOR SUMMARY JUDGMENT REVIEW.
{¶ 25} In his second assignment of error, McKinley argues that the trial court erred in refusing to consider the following statement made by an OSHA representative during its investigation of Standby: "The employer stated he was aware of who filed the complaint because they had fired an employee who stated he would call OSHA." McKinley contends that this statement shows that Standby was aware at the time of his termination that he was complaining to or had complained to OSHA. We disagree.
{¶ 26} Civ.R. 56(C) lists the types of documentary evidence admissible in summary judgment proceedings:
 {¶ 27} Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.
{¶ 28} The statement made by the inspector does not comply with the mandate of Civ.R. 56(C). It was made by an unnamed inspector. It was unsigned and unsworn.[2] Unsworn and unsigned statements are not materials authorized by Civ.R. 56(C) for consideration on a motion for summary judgment. Dorsey v. Morris (1992), 82 Ohio App.3d 176; Butler v.Young (Jan. 14, 1999), Cuyahoga App. No. 73549, unreported; Celinski v.Benke (Nov. 29, 1996), Ashtabula App. No. 95-A-0030, unreported; Botellov. Reyes (Jan. 24, 1997), Sandusky App. No. S-96-003, unreported. Accordingly, we find that the trial court properly refused to consider it.
{¶ 29} Defendant's second assignment of error is overruled.
 III. {¶ 30} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN A COMMON LAW WRONGFUL DISCHARGE CLAIM BY FAILING TO CONSIDER THE EMPLOYEE'S TERMINATION BASED UPON SAFETY COMPLAINTS TO THE EMPLOYER AS BEING ACTIONABLE.
{¶ 31} In his third assignment of error, McKinley claims that the trial court erred in granting summary judgment in favor of Standby because genuine issues of material fact existed concerning his claim for retaliatory discharge. For the following reasons, we agree.
{¶ 32} In Pytlinski v. Brocar Products, Inc. (2002),94 Ohio St.3d 77, the Ohio Supreme Court held that retaliation against employees who file complaints with their employer regarding workplace safety clearly contravenes the public policy of Ohio. The complaints do not need to be filed with OSHA. Id. at 80. Rather, it is the "retaliatory action of the employer that triggers an action for violation of the public policy favoring workplace safety. Id., citing from Kulch v.Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, 152-153.
{¶ 33} Having determined that McKinley does have a cause of action for retaliatory discharge under the common law, we must now determine whether a triable issue of fact exists.
{¶ 34} In support of its motion for summary judgment, Standby offers evidence that the reason it terminated McKinley was because he was incompetent at work. Horvath testified that McKinley was not competent to perform his job because he was a poor electrician. Horvath cited several examples of his poor work performance, including a fan falling out of the wall, and McKinley getting shocked by wires. Other co-workers made written statements regarding McKinley's poor job performance.
{¶ 35} Once an employer articulates a legitimate nondiscriminatory reason for the adverse employment action, the burden of production shifts back to the employee to demonstrate that the reason was merely a pretext for the wrongful discharge. Frantz v. Beechmont Pet Hosp. (1996),117 Ohio App.3d 351, 359. Pretext may be shown either directly by persuading the trier of fact that an illegal reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Id.
{¶ 36} Here, McKinley offers the following evidence to show that Standby's proffered reasons for his termination were pretextual: First, he made several complaints regarding the lack of safety procedures at the plant. Second, he received no verbal or written notice of any complaints regarding his job performance while at Standby. Third, the documentation offered by Standby to support his discharge was created after his actual termination. Indeed, Standby concedes that the memorandum dated December 30, 1995 was actually written in January 1996, following the investigation by OSHA into Standby's safety practices. (See Standby's appellate brief pp. 25-26).
{¶ 37} Upon review of the record, we conclude that McKinley has produced sufficient evidence upon which reasonable minds could differ as to whether Standby's proffered reasons for McKinley's discharge were pretextual. Thus, summary judgment should not have been granted on McKinley's claim for retaliatory discharge. Accordingly, the judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
It is ordered that appellant recover of appellee his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, J., CONCURS. COLLEEN CONWAY COONEY, J., CONCURS INPART AND DISSENTS IN PART. (SEE CONCURRING AND DISSENTING OPINIONATTACHED).
[1] McKinley's original complaint was filed on June 26, 1996. He filed a notice of voluntary dismissal on March 8, 1999.
[2] We also note that during the discovery stage of this litigation, McKinley had ample opportunity to identify the individual who wrote the report, and either take his/her deposition or secure an affidavit.