[Cite as *Green v. Ohio Lottery Comm.*, 2012-Ohio-3647.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JEFFREY W. GREEN

    Plaintiff

    v.

OHIO LOTTERY COMMISSION

    Defendant

Case No. 2009-02961

Judge Joseph T. Clark

<u>DECISION</u>

{¶ 1} Plaintiff brought this action alleging discrimination based upon race.[1] The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} Plaintiff, an African-American male, began his employment with defendant, Ohio Lottery Commission (OLC), on May 24, 1993, as a Lottery Sales Representative. Plaintiff was subsequently promoted to the position of Assistant Regional Sales Manager in Youngstown, Ohio, where he was responsible for supervising 13 sales representatives.

{¶ 3} In 2003, the Office of Inspector General (OIG) received an anonymous written complaint alleging that plaintiff had inappropriately used his state-issued telephone. Following an investigation by both the OIG and OLC, plaintiff made restitution for telephone expenses that were determined to be "personal business" and an investigatory report was forwarded to defendant's Labor Relations Officer to conduct

a pre-disciplinary hearing.  (Defendant's Exhibit C.)  As a result of the investigation and hearing, on June 3, 2004, plaintiff received a letter of "verbal reprimand" from Dan Metelsky, OLC's Deputy Director of Sales, wherein plaintiff was advised that the letter served as "a cautionary warning and any further actions of this nature may lead to more serious discipline up to and including termination."  (Defendant's Exhibit D.)

{¶ 4} On August 25, 2005, OLC received an anonymous letter which contained allegations that plaintiff was calling a political talk radio show "on a daily basis" during working hours.  (Plaintiff's Exhibit 3.)  On September 6, 2005, plaintiff met with OLC managers, including Deputy Director Nancy Minco and Assistant Deputy Director Kenneth Adams.  (Defendant's Exhibit G.)  During the meeting, plaintiff was asked whether he called radio talk shows during business hours and plaintiff adamantly denied making such calls; however, approximately ten days later, plaintiff agreed to sign a statement that he had made one such call.  Minco and  Personnel Services Manager Elizabeth Popadiuk met with plaintiff's supervisor, Regional Manager Laurie Tall and other OLC staff.  Based upon information obtained during the meeting, Thomas Hayes, OLC's director, authorized Minco to secure records showing calls made from plaintiff's telephone line for the period January 1, 2005 to August 31, 2005.  OLC conducted an investigation and notified plaintiff that a pre-disciplinary meeting would be held on October 4, 2005, to determine whether discipline should be imposed based upon plaintiff's use of the state-issued telephone.

{¶ 5} The pre-disciplinary notice cited 12 work rules which were applicable to plaintiff's telephone usage, including the following: abuse of OLC telephones; failure to follow polices, procedures, and directives; conducting non-work related business on OLC time; using OLC property for reasons other than its intended use; misusing an employee's position for gain; dishonesty; engaging in prohibited political activity; neglect of duty; and insubordination.  (Plaintiff's Exhibit 4.)  The notice advised plaintiff that he had the right to present evidence at the meeting and that discipline for violation of the cited rules included "removal."  As a result of the pre-disciplinary meeting, OLC Labor Relations Officer Bruce Trakas prepared a report for Director Hayes wherein he stated that he agreed with the joint recommendation of Minco, Adams, and Popadiuk that

[1]On May 19, 2011, the court rendered judgment in favor of defendant on plaintiff's claim of age

plaintiff's employment with OLC should be terminated for his "lack of veracity" during the course of the investigation of his use of the OLC telephone system, in addition to violations of work rules concerning nonfeasance and insubordination. (Defendant's Exhibit G.) On October 27, 2005, Hayes notified plaintiff that his employment with OLC was terminated effective October 28, 2005. (Plaintiff's Exhibit 6.)

{¶ 6} R.C. 4112.02 provides, in part: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race [or] color * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Case law interpreting Title VII of the Civil Rights Act of 1964 is also applicable to R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm.* (1981)*,* 66 Ohio St.2d 192, 196.

{¶ 7} To establish a Title VII employment discrimination claim, a plaintiff is required to either "present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.* (C.A.6, 2003), 319 F.3d 858, 864-865. If there is no direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, will apply. Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of race discrimination by establishing that plaintiff: 1) was a member of a protected class; 2) suffered an adverse employment action; 3) was qualified for the position held; and 4) that comparable, nonprotected persons were treated more favorably. Id. at 802.

{¶ 8} If plaintiff establishes a prima facie case, the burden of production shifts to defendant to "articulate some legitimate, nondiscriminatory reason for [its action]." Id. If defendant succeeds in doing so, then the burden shifts back to plaintiff to demonstrate that defendant's proffered reason was not the true reason for the employment decision. Id. at 804.

{¶ 9} Although plaintiff has not brought forth direct evidence of racial discrimination, an inference of discrimination has been shown circumstantially inasmuch

---

discrimination; plaintiff's claims based upon violation of public policy were dismissed.

as he was a member of a protected class (African-American), he was discharged, he was qualified for the position, and he was replaced by a person outside the class. Defendant contends that the decision by plaintiff's supervisors to place plaintiff on a performance improvement plan establishes that he was not qualified for his position. However, plaintiff's evaluations show that he met the majority of defendant's expectations for his position and the performance improvement plan was instituted to address deficiencies in his performance. Upon review of the evidence, the court finds that plaintiff was qualified for the position held. Accordingly, the court must determine whether OLC presented legitimate, nondiscriminatory reasons for its actions and, if so, whether plaintiff has shown that the reasons proffered were a mere pretext for race discrimination.

{¶ 10} According to Hayes' letter, the decision to terminate plaintiff was "primarily" based upon his excessive personal use of the OLC telephone and his actions during the investigation, both of which "were determined substantially egregious." (Plaintiff's Exhibit 6.) Adams testified that plaintiff had been cautioned on "numerous" occasions by his supervisors about making excessive personal phone calls during working hours and that he had personally warned plaintiff several times. According to Adams, although it was not a part of the investigation that resulted in the termination of plaintiff's employment, plaintiff's excessive use of his personal cell phone also interfered with his work. Adams testified that, after plaintiff had received his letter of termination, plaintiff acknowledged that Adams had previously warned him about making personal phone calls. Adams related that he had no doubt that plaintiff was "less than truthful" during the investigation in responding to questions about his telephone usage. Adams testified that there was no mention of plaintiff's race during the investigation.

{¶ 11} Popadiuk testified that she interviewed OLC staff in the Youngstown office who confirmed that plaintiff had received numerous warnings from both his current and former managers about making personal calls while at work. Based upon those interviews, Popadiuk received authorization from Hayes to obtain plaintiff's telephone records and she testified that a review of the records revealed that the majority of the calls were not related to OLC business. Popadiuk testified that plaintiff also reviewed the telephone records and plaintiff conceded that he had not been honest during the

course of the investigation. Popadiuk stated that plaintiff admitted he made personal long-distance phone calls and that he called and participated in radio shows during working hours. According to Popadiuk, plaintiff's violations of OLC's telecommunications policy were numerous and egregious. Popadiuk testified that, in light of plaintiff's "insubordination" and false statements, termination was an appropriate discipline under these circumstances. Popadiuk was adamant that plaintiff's race was never an issue during either the investigation or the discussions concerning discipline.

{¶ 12} Based upon the testimony and evidence presented, the court finds that defendant clearly established a legitimate, nondiscriminatory basis for termination of plaintiff's employment. To the extent that plaintiff argues that he should have received a form of discipline other than termination, the court has previously acknowledged that it may not substitute its judgment for that of an employer and may not second-guess the business judgments of employers making personnel decisions. *Dodson v. Wright State Univ.* (1997), 91 Ohio Misc.2d 57. The evidence supports OLC's determination that plaintiff made an excessive number of private calls and he was warned by his supervisors that such calls could result in disciplinary action, including discharge. Indeed, plaintiff acknowledged that he received written notice that further misuse of his state-issued telephone could result in removal. In short, defendant has met its burden.

{¶ 13} The court must next determine whether plaintiff demonstrated by a preponderance of the evidence that the reasons offered by defendant were not its true reasons, but were a pretext for discrimination. *McDonnell Douglas,* supra, at 804. The court must find either: "'(1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the discharge, or (3) that the proffered reason was insufficient to motivate the discharge.'" *Owens v. Boulevard Motel Corp.* (Nov. 5, 1998), Franklin App. No. 97APE12-1728, quoting *Frantz v. Beechmont Pet Hosp.* (1996), 117 Ohio App.3d 351, 359.

{¶ 14} Upon review, the court finds that the totality of the evidence demonstrates that defendant's proffered reasons were based in fact, that they were not a pretext, and that they were clearly sufficient to justify plaintiff's discharge. Both Adams and Popadiuk testified credibly that they carefully reviewed the evidence gathered during the investigation and that plaintiff's race was not an issue in either the investigation or the

decision to discharge him. Simply stated, plaintiff did not present any convincing evidence that OLC's decision was based upon plaintiff's race. Thus, plaintiff has failed to persuade the court that defendant's motive for terminating his employment was based upon his race.

{¶ 15} For the foregoing reasons, the court finds that plaintiff has failed to prove his claim of discrimination by a preponderance of the evidence. Accordingly, judgment shall be rendered in favor of defendant.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JEFFREY W. GREEN

      Plaintiff

      v.

OHIO LOTTERY COMMISSION

      Defendant

Case No. 2009-02961

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>

{¶ 16} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

 

_____
JOSEPH T. CLARK
Judge

cc:

Elizabeth H. Farbman
James E. Roberts
John A. McNally IV.
100 Federal Plaza East, Suite 600
Youngstown, Ohio 44503-1893

Velda K. Hofacker
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

004

Filed February 27, 2012
To S.C. Reporter August 13, 2012